[Crim. No. 244. In Bank.—December 11, 1897.]

THE PEOPLE, Respondent, v. JOSEPH HUBERT, Appellant.

CRIMINAL LAW—HOMICIDE—PARTIAL INSANITY—INSANE DELUSIONS—MEDICAL OPINIONS—MATTERS OF FACT—INSTRUCTIONS.—Matters of medical science and medical opinions bearing upon the question of partial insanity are to be proved as matters of fact, and are not propositions of law, though embodied in legal treatises and judicial opinions, and it is error to instruct upon them as matter of law, or to instruct the jury that if the defendant entertained certain special beliefs which the defense claimed constituted the delusion which impelled the defendant to commit the homicide, and they were unsound, existing only in his imagination, then they were insane delusions, as matter of law.

ID.—REBUTTING EVIDENCE—GENERAL AND PARTIAL INSANITY.—Where there was evidence for the defendant tending to prove both his general and partial insanity, the prosecution may give in rebuttal as to either the testimony of acquaintances of the defendant; and in rebuttal of partial insanity the prosecution may show that the defendant was in other respects sane.

ID.—TESTIMONY OF BUSINESS ACQUAINTANCE—FOUNDATION FOR OPINION—DISCRETION.—It is largely in the discretion of the court to determine whether the business acquaintance and conversations had by a wit-

ness with the defendant were a sufficient foundation to enable him to testify that in his opinion the defendant was sane as a business man.

ID.—EFFECT OF INSANE DELUSIONS, COMBINED WITH GENERAL SANITY—INSUFFICIENT DEFENSE—DELUSION AS TO POISON—UNJUSTIFIABLE HOMICIDE.— If the defendant had insane delusions which completely possessed him, but was sane on all other subjects, then he must be judged as though the facts with respect to which the delusions existed were real; and where these facts do not constitute a defense to the homicide, the defendant cannot be justified on account of the existence of the insane delusions; and an insane delusion of a defendant accused of the murder of his wife, that she had put poison in his food, of which he stated that he was going to procure a test, cannot, if the fact existed, justify the homicide.

ID.—IMPROPER REQUEST FOR INSTRUCTIONS AS TO JUSTIFICATION OF HOMICIDE. Instructions requested by the defendant upon the subject of justification of the homicide on the ground of insane delusions, giving him a right of self-defense, are properly refused, where there is no evidence tending to establish a delusion as to facts which, if they had been as he believed they were, would not constitute such jeopardy as would justify the homicide, and where the instructions asked are incorrect even if there had been such evidence.

ID.—MODIFICATION OF ERRONEOUS REQUEST — WEIGHT OF EVIDENCE—TEST OF RESPONSIBILITY.—An instruction requested by the defendant, which bears upon the weight of evidence and contains a test of responsibility for crime which is incorrect, should properly be refused; and the defendant cannot complain of a modification which states the correct rule of responsibility.

ID.—IMPROPER REQUEST FOR INSTRUCTION AS TO INSANITY—WEIGHT OF EVIDENCE—IRRESISTIBLE IMPULSE—CORRECT RULE.—A proposed instruction which is partly upon the weight of evidence, and which embodies the proposition that an insane irresistible impulse is a defense to a criminal charge, is properly rejected, the true rule being that notwithstanding the act was the offspring of irresistible impulse, and the impulse was irresistible because of mental disease, still the defendant must be held responsible if he at the time had the requisite knowledge as to the nature and quality of the act, and of its wrongfulness.

ID.—HARMLESS REFUSAL OF REQUEST—PRESUMPTION OF INNOCENCE OF MURDERED WIFE.—The refusal of the court to instruct the jury that it must be presumed that the wife of the defendant, who was killed by him, did not attempt to poison him, is harmless, where it is conceded that the charge was false, and where it appears that the delusion of the defendant as to such attempt did not constitute a defense under the admitted facts.

ID.—REASONABLE DOUBT—HARMLESS ATTEMPT TO EXPLAIN.—An instruction telling the jury that a reasonable doubt is a fair doubt is not properly an explanation of reasonable doubt, but the jury could not conclude that a proper instruction as to reasonable doubt is taken back by the meaningless phrase.

ID.—DECISION OF JURY ACCORDING TO CONSCIENCE.—It is not improper to instruct the jury that, after weighing the evidence, they must decide according to their consciences.

APPEAL from a judgment of the Superior Court of Calaveras County and from an order denying a new trial. R. C. Rust, Judge.

The main facts are stated in the opinion of the court. The nature of the ruling upon the evidence of the witness C. Burger is set forth in the syllabus upon the subject of the testimony of a business acquaintance, and the laying of a foundation therefor.

F. J. Solinsky, and Reddy, Campbell, & Metson, for Appellant.

W. F. Fitzgerald, Attorney General, and C. N. Post, Deputy Attorney General, for Respondent.

TEMPLE, J.—The defendant was convicted of murder in the first degree, and appeals from the judgment and from an order refusing a new trial. The defense was insanity of the defendant, caused by excessive indulgence in alcoholic drinks for a number of years, inducing chronic alcoholism, through which his brain became permanently diseased, causing delusions and rendering him incapable of knowing the wrongfulness of the act, for the commission of which he stood charged.

The evidence tended to show that he had been almost constantly drunk for some years, and during the last few months before the homicide had frequently declared that his wife was putting poison in his food, and that the poison caused sores upon his body, and he was in the habit of showing the sores in proof. He also declared that a dog had been poisoned by eating some of the food. He said his wife was a natural born criminal, and that the shape of her head indicated it. He further charged his wife and her brother with stealing eggs and other articles of personal property from his place. He had even attempted to have some food prepared by his wife analyzed, and he made complaint before a magistrate against his wife and her brother, and procured a warrant for their arrest. During all this time he was on very bad terms with his wife and treated her brutally. He wished

to obtain a divorce and tried to induce her to accept five hundred dollars for her share in the community property. He said she had been guilty of adultery with a person whom he named, and often declared his intention to take her life. On one occasion he said he would kill her if it took the shirt off his back to clear him.

It seems that he was afflicted with eczema, which caused the breaking out of sores upon his body which he attributed to poison. It was not claimed by anyone that there was any foundation for his cruel charges against his wife. On one side it was claimed that they were the offspring of malice; on the other, that they constituted an insane delusion which took firm possession of his diseased intellect, and that the homicide was entirely caused by this partial insanity; for the defense also claimed, and counsel induced the court to charge the jury that such was their defense, and counsel here contend as part of the defense, that in all other respects and upon all other subjects, except as to the subject matter of the delusions, he was perfectly sane.

The homicide was committed on the nineteenth day of April, 1895. The defendant had a wine cellar, and on that day had employed three of his neighbors to assist him in washing his casks and to rack off his wine. Whether defendant drank any liquor on that day is not shown, expressly or at all, unless from testimony showing that he was nearly always drunk, and that whenever he met acquaintances where there was liquor he insisted upon their drinking with him, we are at liberty to infer that he did not work all the morning in the wine cellar with three acquaintances without drinking. His wife prepared dinner for him and his three assistants, laying out the table in the kitchen. She placed upon the table four plates of soup, and goodnaturedly boasted to the neighbors of its quality. All sat down and commenced eating except the deceased, who continued to busy herself about the stove. The defendant tasted his soup three times deliberately, and then without a word got up and went into an adjoining room, from which he immediately returned with a pistol with which he shot his wife through the head. She became at once unconscious and died a few hours later. He said she had put poison in his soup and asked one of the company to taste it. He wanted it preserved for examination. He then or-

dered them all out of the house, and said he would go for the doctor. When one of them objected to leaving the wife there, he said: "You can't do anything for her. I have brained her." While they were getting up his horse he walked about distractedly, repeating to himself: "O Lord! What have I done," or some equivalent expression.

He then went to John K. Petty, justice of the peace, and told him he had killed his wife and expected that they would hang him for it. A few days before he had told the same judicial officer that he would have to kill her, and, when told that he would get into trouble, said he didn't care a damn.

He then went to the constable and gave himself up, saying that he had shot his wife, but didn't know if she was dead. He said he took his pistol intending to make her eat some of the soup, and it went off and killed her. Soon after, however, he said he was not sorry, but was glad, and would do the same thing again.

At the trial, at the request of the defendant, the court told the jury that the defense was partial insanity, otherwise called monomania; and that defendant "was laboring under insane delusions which so permeated his reason as to incapacitate him from knowing the difference between right and wrong, as to the acts charged in the information, and his relations with the deceased, and her actions, motives, and intentions toward him, and that he acted in pursuance of such delusions."

The court also, improperly, but at the request of defendant, declared as law certain medical opinions upon the pathology of mental disease. Among them this: "The law recognizes partial as well as total insanity—that a person may be insane upon one or more subjects, and sane as to all others." And again: "A man's mental faculties may be in full vigor, but upon some one subject he seems to be deranged," etc. An instruction was also given enumerating and setting out the special beliefs which the defense claimed constituted the delusion which impelled the defendant to commit the homicide, and the jury were told that if the defendant entertained such beliefs, and they were unsound, existing only in his imagination, then they were insane delusions, as matter of law. Of course, there is no such rule of law. Matters of science are always to be proven, and are treated as mat-

ters of fact, and the court should not instruct in regard to them. The fact that these matters are discussed in legal treatises or judicial opinions does not convert them into propositions of law. In some jurisdictions there is not the same objection to such instructions as here.

The reason for emphasizing the position that counsel for the defendant only claimed that the defendant was insane as to certain matters, persons, and things, and that he was sane in all other respects, seems to be to furnish a position of advantage from which to attack certain rulings admitting in rebuttal the testimony of acquaintances of the defendant as to his insanity. The objection was, that the evidence did not rebut anything because defendant did not attempt to prove general insanity, and the witnesses did not pretend to know anything of the alleged delusions. Of course, if no such partial insanity existed, intimate acquaintances could know nothing of it, and the fact that they did not was some proof that defendant had no such delusions. Besides, as a matter of fact, the defense did attempt to prove general insanity, and some of their witnesses testified as to the existence of such insanity.

And, if we admit that partial insanity was shown, this opened the door to the prosecution to show, if it could, that he was in other respects sane. If insanity were shown, the extent of it became at once material, and wherever the burden of showing its limits may have been, it was proper for the prosecution to introduce evidence upon the subject. If the defendant had certain special delusions which completely possessed him, but was perfectly sane on all other subjects, as counsel claim was their position at the trial, then he must be judged as though the facts with respect to which the delusions existed were real. (*McNaughten's case*, 10 Clark & F. 200.) I do not find in the record any offer to admit that in other respects the defendant was perfectly sane, and it is at least doubtful if the defense could make such an admission. In this case such an admission would have been fatal, for there is nothing in the alleged delusions which would constitute a defense.

I think the court ruled correctly in admitting the testimony of C. Burger, but, were it doubtful, we would not, under any or-

dinary circumstances, reverse a case upon such a point. Upon that subject a very large discretion is necessarily allowed the trial court.

The fourth and fifth instructions were properly refused. There is no evidence tending to establish a delusion as to facts which, if the facts had been as he believed they were, would constitute such jeopardy as would justify the homicide. And if there had been such evidence the instruction asked was incorrect. The fifth instruction asked contained propositions in regard. to medical science which no court in this state should give.

The sixth instruction asked was properly modified. It should have been refused because an instruction as to the weight and value of evidence, but it also contained a test of responsibility for crime which was incorrect. The correct rule was stated in the modification.

Perhaps the loudest complaint is made over the refusal of the court to give instruction 8. It reads as follows: "When insanity is set up as a defense by a person accused of crime, in order that the defense may avail, the jury ought to believe from the evidence that at the time of the commission of the crime the mind of the accused was so far affected with insanity as to render him incapable of distinguishing between right and wrong in respect to the killing, or, if he was conscious of the act he was doing and knew its consequences, that he was in consequence of his insanity wrought up to a frenzy which rendered him unable to control his actions or direct his movements; but, where the insanity consists of an insane delusion, the very fact that he is possessed of such a delusion shows that he is incapable of reasoning upon that subject; otherwise it would not be an insane delusion; and if, in pursuance and as a part of said insane delusion, he should commit some overt act, or what would otherwise be a criminal act, then, as a matter of law, you are instructed that he is unable to reason upon the nature or quality of the act, or to know or understand the wrongfulness of the act."

The ruling is entirely justified by the fact that the proposed instruction is partly upon the weight and value of evidence, but it contains the proposition that an insane irresistible impulse is a defense to a criminal charge. If this be not a defense then

there was no attempt to make a defense at the trial. The very statement of the defense, if it would be regarded as an admission of the facts, necessitated a conviction.

This involves also another point made, to wit, that the verdict is against the evidence, in which it is contended there is no substantial conflict.

It must be held that, conceding that the act was the offspring of an irresistible impulse, and the impulse was irresistible because of mental disease, still the defendant must be held responsible if he at the time had the requisite knowledge as to the nature and quality of the act, and of its wrongfulness. It was so held in *People v. Hoin,* 62 Cal. 120, 45 Am. Rep. 651, and in *People v. Ward,* 105 Cal. 335.

We do not know that the impulse was irresistible, but only that it was not resisted. Whether irresistible or not must depend upon the relative force of the impulse and the restraining force, and it has been well said to grant immunity from punishment to one who retains sufficient intelligence to understand the consequences to him of a violation of the law, may be to make an impulse irresistible which before was not.

It has been proposed as a rule to leave it to the jury to say whether the act was the offspring of insanity, meaning, I presume, whether the defendant would have committed the act had he not been insane.

There are many degrees in mental unsoundness. Some cases could only be detected by a very skilled expert. Some cases of mental unsoundness might be known only to very intimate acquaintances, and perhaps by them only noticeable under peculiar conditions. But, however slight the defect, only Omniscience can say whether the act would have been committed had the taint not existed. It is an impracticable rule.

It is said the impulse is irresistible, because by the impairment of the emotional part of the intellect the will power is destroyed or weakened. No one contends that the legal test is perfect, doubtless it is far from being so; but when the will power is weakened, although the mentality is not at all or only slightly impaired, the fear of punishment must be of some value as a restraint, and the class of people referred to need that restraining influence most. Lord Bromwell, in a discussion of this subject,

related the case in which a witness, to prove that a prisoner was so afflicted, related that he had once become violent and killed a cat, and said he believed the impulse could not be resisted by the defendant. His lordship asked if he thought he would have killed the cat if a policeman had been present. The witness answered no. His lordship then said he supposed the impulse was irresistible only in the absence of a policeman.

There are doubtless some cases, like that of *Hadfield's case,* 27 How. St. Tr. 1281, in which the fear of punishment does not restrain, but where the rule works manifest injustice the unfortunate defendant is in some way saved from punishment.

In *United States v. Guiteau,* 1 Mackey, 498, to show whether the act charged was the offspring of mental disease or of natural passion, the prosecution was allowed to show that the accused had always been malicious and brutal. In other words, to show any other delinquency of which he had been guilty which would tend to show that he was bad enough to commit an act so atrocious from natural passion. I think our rule more humane, more worthy of a civilized people.          .

The refusal of the court to instruct the jury that it must be presumed in favor of innocence that Mrs. Hubert did not attempt to poison defendant could have done no harm. It was evidently— as already said—taken for granted by everyone that the charge was false, and besides the delusion, if it existed, did not constitute a defense under the admitted facts of this case.

To tell the jury that a reasonable doubt is a fair doubt is to give an explanation that does not explain. It seems to me the first phrase is the one most easily comprehended, but the jury could not conclude that it was taken back by the meaningless phrase. The criticism upon the use of the word testimony is answered by *Mann v. Higgins,* 83 Cal. 69.

There was nothing wrong in telling the jury that after weighing the evidence they must decide according to their consciences. Of course, they must consider the evidence by the use of their reasons, and if we consider the conscience a distinct faculty they could not weigh the evidence in their consciences, but they could weigh the evidence and decide conscientiously, and that is what they were told to do.

Several other points are made which I do not think it worth

while to discuss. They have been carefully considered, and I do not think they call for a reversal.

In view of what has been said, it is unnecessary to consider further the point that the verdict is against the evidence. In addition to what has been suggested, there was evidence which would have justified the jury in concluding that the defendant was not at all insane, and, even if he were partially insane, yet the criminal act was not the offspring of such insanity, but of the natural passions of the defendant.

The judgment and order are affirmed.

Henshaw, J., McFarland, J., Harrison, J., Garoutte, J., Van Fleet, J., and Beatty, C. J., concurred.

Rehearing denied.