[Crim. No. 15314. In Bank. Aug. 16, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM M. NOAH et al., Defendants and Appellants.

## COUNSEL

Charles E. Scott, Jr., under appointment by the Supreme Court, for Defendants and Appellants.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Robert R. Granucci and Karl S. Mayer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—On retrial, after this court had reversed judgments of conviction for violation of Penal Code section 4500 (malicious aggravated assault by a life prisoner),[1] a jury found defendants William Noah and Marines Meyers III guilty of violating Penal Code section 4501 (aggravated assault by a prisoner serving a sentence of less than life). Defendants appeal from the judgments entered on the verdicts.

Defendant Meyers contends that, as a prisoner serving a life term at the time of the offense, he cannot be properly convicted of violating section 4501 and that the trial court's instruction to the jury that section 4501 was a lesser included offense within section 4500 was, therefore, erroneous as to him.[2] In addition, both defendants contend that the court erred in

---

[1]*People* v. *Chacon* (1968) 69 Cal.2d 765 [73 Cal.Rptr. 10, 447 P.2d 106]. Of the original four defendants, only Noah and Meyers were retried in this proceeding.

[2]After a ruling by the trial court that Noah was not serving a life term because the judgment on which the term had been imposed was invalid, Noah requested and received an instruction that he "was not during the commission of the offense charged serving a life sentence." Therefore, he does not challenge the conviction on this ground and the propriety of the trial court's ruling is not before us.

refusing to give instructions on other offenses which, they assert, are necessarily included within section 4500,[3] and in giving incomplete instructions regarding the effect of diminished capacity caused by mental disease or defect. For reasons that will appear we have concluded that section 4501 is applicable only to persons serving a term of less than life imprisonment and that the judgment of conviction of defendant Meyers must, therefore, be modified and as modified, affirmed, and that the judgment of conviction of defendant Noah should be affirmed.

Sometime after 10 a.m. on April 30, 1967, several inmates in the maximum security wing of Soledad prison were released from their cells for exercise in the corridor on which the cells fronted. Shortly thereafter, two correctional officers noticed that defendants and two other inmates, Chacon and Smith, were involved in a fight during which Noah, Meyers and Chacon stabbed Smith. The inmates ignored an order to stop the fight and return to their cells. Instead, they continued to stab Smith. Noah and Chacon then dragged Smith by his legs down the tier to the outside of a cell occupied by Garcia, while Meyers walked behind near Smith's head. Defendants and Chacon then propped Smith up against Garcia's cell, where he was apparently stabbed again by someone inside the cell. Tear gas used by the guards then forced Noah, Meyers and Chacon to withdraw to Noah's cell. Following the incident, Smith underwent surgery for some 40 to 50 stab wounds on his body. Noah was found to have a stab wound on his arm.

Smith testified that he started the fight with a knife that he was carrying to protect himself from Meyers with whom he had had an earlier altercation at another correctional facility. Smith claimed that he had stabbed at Noah after the latter accused him of cheating in a gambling game, and that he had stabbed at Meyers when Meyers came to Noah's aid. Smith also acknowledged that he had made a homosexual advance towards Meyers. Meyers testified that Smith had attacked Noah when Noah objected to Smith's homosexual advance towards Meyers. Meyers admitted that he was in possession of a knife. Two correctional officers who had witnessed the fight in progress, but did not see the events leading up to it, testified that they had not seen any weapon in Smith's possession, but did see knifelike weapons in the hands of defendants and Chacon. Another inmate corroborated Meyers' and Smith's version of the incident. Noah did not take the stand.

The theory of the defense was that Smith initiated the fight, defendants acted in self-defense, and the excessive force used by them was caused by

---

[3]All references are to the Penal Code unless otherwise indicated.

uncontrollable rage resulting from mental defects or disease. The defense offered psychiatric evidence that Noah had an abnormal electroencephalogram indicating brain malfunction which would affect his ability to exercise rational judgment in high stress situations. Dr. Greenberg, a psychiatrist, testified that Noah's judgment would be markedly impaired and his control over his behavior "extremely" impaired so that it was probable that he would not realize that an opponent had broken off his attack. He also testified that it was improbable that Noah would be able to distinguish right from wrong during an affray and that, as a result of underlying brain disease, Noah engaged in impulsive behavior during periods in which he was incapable of governing his actions. Dr. Ohanian, a psychologist, reached similar conclusions on the basis of tests which he had administered to Noah.

Dr. Peschau, a psychiatrist, testified that Meyers' capacity to form malice was impaired and that, at the time of the incident, Meyers was not able to formulate malice although he was aware that society forbade his assaultive acts. Dr. Peschau testified that Meyers was legally sane, but was emotionally disturbed and had some electroencephalographic changes which would contribute to his emotional disturbances.

Psychiatric evidence presented by the prosecution suggested that although Noah had an assaultive personality, and was impulsive and erratic, his judgment was intact. Testimony was to the effect that Noah was aware of the consequences of his acts and that the acts were unlawful, and that he did not suffer from a mental disorder. Prosecution experts testified that Meyers was able to form malice and specific intent to assault during a rage.

Both defendants were charged by information with violation of Penal Code section 4500, which provides in relevant part: "Every person undergoing a life sentence in a state prison of this state, who, with malice aforethought, commits an assault upon the person of another, other than another inmate, with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death; however, in cases in which . . . the person . . . assaulted is another inmate, the punishment shall be death or imprisonment in the state prison for life without possibility of parole for nine years, at the discretion of the court or jury trying the same. . . ." The trial court instructed the jury that violation of section 4500 necessarily includes as a lesser offense violation of section 4501. The trial court also instructed the jury that if there was a reasonable doubt as to whether defendant Meyers had the mental capacity to harbor malice he could not be found guilty of malicious assault by a life prisoner, but the court refused to give Meyers' proffered instruction

that he could nevertheless be found guilty of battery or felonious assault or to give instructions defining those offenses.

Penal Code section 4501, violation of which the trial court ruled was a lesser offense within section 4500, provides: "Every person confined in a state prison of this state *except one undergoing a life sentence* who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury, shall be guilty of a felony and shall be imprisoned in the state prison not less than three years." (Italics added.)

It is undisputed that Meyers was serving a life sentence on April 30, 1967. The People contend that he may nonetheless be convicted of violating section 4501 as the clause "except one undergoing a life sentence" defines neither an element of the offense nor an affirmative defense. Although the purpose of the statutory scheme for punishment of felonious assaults by prisoners in state prisons would undoubtedly be furthered by adoption of the construction urged by the People, both the legislative history and the unequivocal language of section 4501 preclude that construction. (See *In re King* (1970) 3 Cal.3d 226, 237 [90 Cal.Rptr. 15, 474 P.2d 983]; *People* v. *Stevenson* (1962) 58 Cal.2d 794, 798 [26 Cal.Rptr. 297, 376 P.2d 297].)

Before 1937 only two sections of the Penal Code dealt with assaults with a deadly weapon. The first, section 245, now incorporated within section 245, subdivision (a), applied to the general population and punished "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury. . . ." The second, former section 246, was reenacted in 1941 as the present section 4500. Then, as now, the section applied only to life prisoners who committed an aggravated assault with malice aforethought. In 1937, the Legislature enacted former section 246a, the forerunner of the present section 4501, which provided: "Every person undergoing a sentence of less than life in a State prison of this State, who, with malice aforethought commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury shall be guilty of a felony and shall be imprisoned in the State prison not less than one year." (Stats. 1937, ch. 541, p. 1554, § 1.)

Like section 246, section 246a was enacted for the purpose of promoting prison safety and was clearly intended to apply only to prisoners serving a sentence of less than life. At the time of its adoption both sections 246 and 246a prohibited identical conduct. The distinction between the two sections lay only in the status of the prisoner who committed the as-

sault and the provision of a lesser penalty for prisoners serving a sentence of less than life. (See, *The Work of the 1937 California Legislature* (1937) 11 So.Cal.L.Rev. 1, 64-65.)

In 1941, former sections 246 and 246a were repealed and reenacted as sections 4500 and 4501, respectively. (Stats. 1941, ch. 106, p. 1124, § 15 and p. 1132, § 16.) In 1959, the Legislature amended section 4501 to eliminate the requirement of malice aforethought (Stats. 1959, ch. 794, p. 2807, § 1), but the language making the statute applicable to "Every person undergoing a sentence of less than life . . . ," remained unchanged. Finally, in 1963, the Legislature adopted the present language[4] by amending section 4501 to read: "Every person confined in a state prison of this state except one undergoing a life sentence. . . ." (Stats. 1963, ch. 2027, p. 4168, § 1.) The 1963 amendment, however, was not intended to change the law but only to make it clear that the section applied to everyone *confined* in a state prison. (*In re Branch* (1969) 70 Cal.2d 200, 216 [74 Cal. Rptr. 238, 449 P.2d 174]; *In re Smith* (1966) 64 Cal.2d 437 [50 Cal. Rptr. 460, 412 P.2d 804].) Thus, our determination in *In re Smith, supra,* 64 Cal.2d 437, 440, footnote 1, that "section 4501 of the Penal Code does not apply to persons undergoing a life sentence," although expressed in an opinion considering a pre-1963 violation of the section, is equally applicable to offenses that occurred subsequent to that amendment.

■ Inasmuch as section 4501 is applicable only to prisoners serving a sentence of less than life, the status of a defendant as one who is serving a life sentence is a defense which he may assert if charged with violation of section 4501. (Cf. *People* v. *Montalvo* (1971) 4 Cal.3d 328, 334 [93 Cal.Rptr. 581, 482 P.2d 205].) ■ It follows that when an information or indictment alleges a violation of section 4500, and by so doing alleges that the defendant *is* serving a life term, section 4501 cannot be a necessarily included offense in fact, since an offender who violates section 4500 cannot violate section 4501. (See *People* v. *Marshall* (1957) 48 Cal.2d 394, 398 [309 P.2d 456].) ■ Furthermore, since a conviction for violation of section 4501 requires an affirmative finding by the trier of fact that the defendant is *not* serving a life sentence, the section cannot be considered a lesser degree of the offense set forth in section 4500.[5] (Cf. *People* v. *Montalvo, supra,* 4 Cal.3d 328, 335, fn. 5.)

---

[4]A 1965 amendment of section 4501 increased the penalty, but made no change in the description of the offense. (Stats. 1965, ch. 330, p. 1438, § 1.)

[5]An anomalous result, one probably unintended by the Legislature, but which this court is powerless to correct is that a nonmalicious aggravated assault by a person serving a life sentence is punishable only under Penal Code section 245, subdivision (a), for which the minimum term of imprisonment (now six months) is shorter than that imposed for violation of section 4501 by persons serving a term of less than life. Thus, the deterrent purpose of punishing life prisoners, who would other-

■ Stated in other language, the elements of the offense set forth in section 4500 are: (1) an aggravated assault; (2) by a state prisoner; (3) serving a life term; (4) with malice aforethought. ■ The elements of the offense set forth in section 4501 are: (1) an aggravated assault; (2) by a state prisoner; (3) who is *not* undergoing a life sentence. ■ Since it is undisputed that defendant Meyers was undergoing a life sentence at the time of the offense, the trial court's instruction to the jury that he could be found guilty of violating section 4501 if there was a reasonable doubt as to his ability to harbor malice was erroneous. It is not necessary, however, to reverse the judgment of conviction of defendant Meyers on this basis, since in finding him guilty of violating section 4501, the jury had to find that all of the elements of a violation of section 245, subdivision (a),[6] a necessarily included offense, were also present. The evidence amply sustains conviction of assault by means of force likely to produce great bodily injury in violation of section 245, subdivision (a), and permits modification of the judgment to that effect. (Pen. Code, §§ 1260, 1181, subd. 6.)

Both Meyers and Noah also contend, however, that the trial court did not adequately instruct the jury regarding the effect of diminished capacity caused by mental disease or defect on the general intent to commit a crime. Defendants' contention is not simply that diminished capacity is a defense to a crime requiring only a general criminal intent, but that evidence of mental disease or defect is admissible to negate the existence of volition on the part of a defendant. In essence, defendants argue that since intent or criminal negligence is an element of every crime (Pen. Code, § 20), and intent presupposes at least a minimal ability to act volitionally, "irresistible impulse" due to mental disorder is a complete defense under a plea of not guilty.

Defendants' novel theory founders on the shoals of Penal Code section 21, which precludes negation of the general criminal intent of section 20 by evidence of any mental defect short of lunacy, idiocy, or insanity. ■ Section 21 makes clear that an otherwise competent defendant who is not insane, a "lunatic," or an "idiot," is capable of achieving that general

wise feel they had little to lose, more heavily than nonlife prisoners who commit similar offenses in prison, is not fully served. (Cf. *People* v. *Wells* (1949) 33 Cal.2d 330, 334-337 [202 P.2d 53]; *People* v. *Finley* (1908) 153 Cal. 59, 61-62 [94 P. 248], affd. *Finley* v. *California* (1911) 222 U.S. 28, 31 [56 L.Ed. 75, 77, 32 S.Ct. 13].)

[6]At the time of the offense, Penal Code section 245, subdivision (a), provided: "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the state prison not exceeding 10 years, or in a county jail not exceeding one year, or by fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment. . . ."

criminal intent required by section 20. It provides: "The intent or intention [of section 20] is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. *All persons are of sound mind who are neither idiots nor lunatics, nor affected with insanity.*" (Italics added.) Although the mental conditions of lunacy and idiocy are not necessarily the same as legal insanity (*People* v. *Baker* (1954) 42 Cal.2d 550, 568, 569 [268 P.2d 705]), that mental abnormality manifesting itself in conduct which defendants describe as the product of "irresistible impulse" has never been judicially recognized as either "idiocy" or "lunacy." To the contrary, irresistible impulse has been consistently rejected as a complete defense to crime in this state. (*People* v. *Gorshen* (1959) 51 Cal.2d 716, 726 [336 P.2d 492]. See also, *People* v. *Walter* (1936) 7 Cal. 2d 438 [60 P.2d 990]; *People* v. *Sloper* (1926) 198 Cal. 238 [244 P. 362]; *People* v. *Trebilcox* (1906) 149 Cal. 307 [86 P. 684]; *People* v. *Owens* (1899) 123 Cal. 482 [56 P. 251]; *People* v. *Hubert* (1897) 119 Cal. 216 [51 P. 329].) ■ As stated in *People* v. *Gorshen, supra,* 51 Cal.2d 716, at page 727, evidence of irresistible impulse "is received not as a 'complete defense' negating capacity to commit any crime but as a 'partial defense,' negating specific mental state essential to a particular crime."

■ Both defendants also contend that it was error for the court to refuse to give instructions on the lesser included offenses of assault with a deadly weapon or by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)) battery (Pen. Code, § 242), and simple assault (Pen. Code, § 240). ■ ■ A defendant is entitled upon request to instructions on necessarily included offenses which the evidence tends to prove (*People* v. *Miller* (1962) 57 Cal.2d 821, 829-830 [22 Cal. Rptr. 465, 372 P.2d 297]; *People* v. *Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281]), and the court must instruct the jury on general principles of law relevant to the issues raised by the evidence even though not requested to do so. (*People* v. *Hood* (1969) 1 Cal.3d 444, 449 [82 Cal.Rptr. 618, 462 P.2d 370].) This rule is applicable to prosecutions under Penal Code section 4500. (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 536 [83 Cal.Rptr. 166, 463 P.2d 390].) ■ Thus, as to Meyers, it was error to refuse to instruct the jury on the lesser included offense of assault by means of force likely to produce great bodily injury[7] since substantial evidence of his diminished capacity to harbor malice was introduced. In view of our decision that the judgment must be modified as to Meyers to reduce the offense to a violation of section 245, subdivision (a), the error does not require reversal of the judgment. ■ Since Noah requested and received an instruction

---

[7]The charging allegations of the information alleged the offense in this language rather than as an assault with a deadly weapon.

that he was not undergoing a life sentence and thus could properly be convicted of violating section 4501, the refusal to instruct on assault with a deadly weapon was not erroneous as to him. The elements of the offenses set forth in sections 4501 and 245, subdivision (a), are identical in all respects except that section 4501 requires, as an additional element, that the defendant be a prisoner confined in a state prison. Noah introduced no evidence upon which a jury might conclude that he was not such a prisoner and thus there was no basis for an instruction on section 245, subdivision (a), as to him. (*People* v. *Osuna* (1969) 70 Cal.2d 759, 767 [76 Cal. Rptr. 462, 452 P.2d 678].) ■ Similarly, there was no evidence from which a jury could conclude that the assault committed by either defendant was less than assault by means of force likely to produce great bodily injury.

Finally, Noah alone contends that the trial court denied him his constitutional right to represent himself by denying his motion for removal from the Correctional Training Facility at Soledad to the Monterey County jail where he would have greater access to legal materials pending trial. The trial court denied the motion for security reasons. ■ A prisoner's decision to represent himself does not entitle him to greater privileges than those granted other prisoners. (*In re Chessman* (1955) 44 Cal.2d 1, 10 [279 P.2d 24].) Accordingly, refusal by the court to order that a prisoner who has elected to represent himself be transferred or that the conditions of his custody be modified does not constitute a denial of counsel.[8]

The judgment of conviction of William M. Noah is affirmed. The judgment of conviction of Marines H. Meyers III is modified to reflect a conviction for violation of Penal Code section 245, subdivision (a), and as so modified is affirmed. Defendant Meyers is remanded to the superior court for new sentencing proceedings consistent with this opinion.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

[8]The record indicates that Noah had been represented by counsel who asked to be and was relieved just prior to the time Noah made his motion. The motion was denied at a hearing later the same day. Counsel was thereafter appointed at Noah's request and represented him throughout the pretrial proceedings and at trial.