Filed 7/8/22 P. v. Valles CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E071361 |
| v. | (Super.Ct.No. RIF1603061) |
| RICHARD VALLES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Affirmed in part, reversed in part.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Warren J. Williams, Paige B. Hazard and Steven T. Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

1

Richard Valles, defendant, got into a fight with the victim Michael Carmona, after Carmona pushed defendant's girlfriend down at a river-side homeless camp. Defendant had to break off the fight when he felt a seizure beginning and left the camp. In the meantime, his tent-mate and one-time codefendant, Jesus Renteria, attacked the victim with a knife, inflicting multiple serious wounds. When defendant returned to the camp, he saw a piece of carpet covering the victim where he lay on the ground. Defendant obtained a firearm from his tent and shot the victim in the head, claiming he did so to put the victim out of his misery, although he thought the victim was dead. After a trial, the jury returned verdicts convicting defendant of first-degree murder (Pen. Code, § 187, subd. (a))[1] and finding that in the commission of the murder defendant personally and intentionally discharged a firearm causing the death of the victim (§ 12022.53, subd. (d)). Defendant was sentenced to state prison for an aggregate term of 50 years to life and appealed.

On appeal, defendant argues that (1) his due process rights were violated by the trial court's failure to instruct the jury on a theory of heat of passion voluntary manslaughter; (2) the court erred in imposing the minimum restitution fine and other fees and assessments without determining if defendant had an ability to pay; and (3) the term imposed for the gun discharge enhancement must be remanded to allow the court to exercise discretion to consider a lesser included enhancement. We affirmed on May 20, 2020, and the Supreme Court subsequently granted review. On May 18, 2022, the

---

[1] All further statutory references are to the Penal Code, unless otherwise stated.

2

Supreme Court retransferred the matter to this court with directions to vacate our original opinion and reconsider the cause in light of its recent decision in *People v. Tirado* (2022) 12 Cal.5th 688.

We vacated our decision and solicited additional briefing from the parties. The People agree that the matter should be remanded to the superior court to allow that court to exercise its discretion to either strike or impose a lesser included enhancement. We therefore reverse the sentence and otherwise affirm.

I.

## BACKGROUND

Defendant and his girlfriend, Cricket, lived in a tent with Jesus Renteria in a tight-knit homeless camp along the Santa Ana River in Riverside. Defendant was acquainted with victim Michael Carmona, known as "Bear," and had fought with him on occasion.

In June 2016, defendant and Carmona started fighting after Carmona pushed Cricket down and struck her, after kicking Cricket's dog. Defendant and Carmona wrestled for 15 or 20 minutes, until defendant felt he was going to have a seizure and let go of Carmona to go down to the river. When he left, "Colt" intervened and administered a choke hold until Carmona lost consciousness.

A short time later, when Carmona regained consciousness, Renteria went into a tent, came out with a knife and proceeded to stab Carmona multiple times. When the stabbing stopped, Carmona emitted gargling and gasping sounds and appeared to be dying. Renteria handed the knife to another camp resident, Peter Strother, who had

3

observed the stabbing, and left. Strother put the knife in a container inside his tent, to keep it for investigators. After Renteria left, Strother could hear Carmona breathing. Defendant returned to the camp, where Strother was waiting, carrying a rifle. Defendant walked up to the victim, whose face was covered with a carpet, and pulled the trigger, after which Strother saw and heard no further movement or breathing from the victim.

On June 18, 2016, law enforcement officers found Carmona in a shallow grave approximately 25 feet from defendant's tent, with the assistance of a cadaver-sniffing dog. The body was still wrapped in carpet. Officers also discovered a .22 caliber bolt-action single-shot rifle in defendant's tent, and they recovered the knife and a .22 caliber casing from Strother's tent.

By the time Carmona's body was found, it was already moderately decomposed. The pathologist noted several knife wounds, but not all of them did major damage. One wound punctured the victim's lung, and another pierced the lower chest and upper abdomen, either of which could have eventually killed the victim within a matter of minutes.

In addition, there was a gunshot wound to the victim's head, which fractured the skull from the inside. The bullet, which did not exit the skull, was found inside the brain. The bullet wound would have caused death immediately. Any of the three major wounds could have killed the victim, but death would have occurred over an interval of minutes.

The ultimate cause of death was attributed to homicidal violence, meaning there was more than one type of violent act. The pathologist could not say for certain, based

4

on the decomposition of the body, that the victim was alive when the bullet entered his brain.

Defendant was charged with murder (§ 187, subd. (a)) along with an enhancement allegation that he personally and intentionally discharged a firearm causing great bodily injury and death within the meaning of section 12022.53, subdivision (d). He was tried by a jury, where defendant testified in his own defense.

According to defendant, when he felt a seizure coming on, he went down to the river, and while there he heard Renteria say, "Oh s—t, he's dead" or "Oh s—t, he's gone." Approximately 10 minutes later, defendant returned to the camp, where he saw Carmona lying on his back, covered in blood, and not breathing. Carmona was wrapped in a carpet. Defendant knew he was not breathing because he put his hands in front of the victim's nose to check for breathing. Carmona was not moving at all or making any noise. Defendant then went into his tent to get his gun, walked over to Carmona and shot him. By this time, Carmona's head was covered.

Defendant explained he shot Carmona because he thought the brain could still feel pain, likening the situation to when a chicken is decapitated, and defendant wanted to put Carmona at ease. He denied telling officers that Carmona was moving, although he recalled telling them that he saw movement that he thought was Carmona's nerves settling. He explained that when he told police he might have seen movement, he did not really see movement, but was just freaking out. He was sure Carmona was dead. Later, defendant buried the victim.

5

On rebuttal, Detective Cobb referred to defendant's interview, taped at the station, in which defendant denied any involvement in the homicide until being confronted with statements of other witnesses. Defendant never told the detective anything about thinking that dead people feel pain, but, instead, told the detective he was putting Carmona out of his misery after acknowledging there was movement on the part of the victim.

Defendant was convicted as charged of first-degree murder (§ 187, subd. (a)), and the jury also returned a true finding that defendant discharged a firearm in the commission of the murder. On August 3, 2018, the court sentenced defendant to state prison for an aggregate term of 50 years to life, comprised of a term of 25 years to life for the first-degree murder, as well as 25 years to life for the gun discharge enhancement.

In addition, the court ordered defendant to pay victim restitution in the amount of $925.00 pursuant to section 1202.4, subdivision (f), along with $300, the minimum restitution fine, pursuant to section 1202.4, subdivision (b), and a $300 parole-revocation restitution fine, which was suspended unless parole is revoked, pursuant to section 1202.45, subdivision (c). The court also imposed a criminal conviction assessment fee of $30 pursuant to Government Code section 70373, and an operations assessment in the amount of $40, pursuant to Penal Code, section 1465.8, subdivision (a)(1). On January 14, 2019, the court modified the sentence, finding defendant lacked the ability to pay the booking fee, the fee for preparation of the probation report, or the presentence incarceration costs, staying the imposition of those amounts.

6

Defendant timely appealed. On May 20, 2020, we affirmed the conviction and sentence in a partially published opinion. (Formerly at *People v. Valles* (2020) 49 Cal. App. 5th 156.) Defendant filed a petition for review which was granted and held pending the Supreme Court's decision in *People v. Tirado, supra,* 12 Cal 5th 68. Following the issuance of that opinion, the Supreme Court retransferred the case to this court with directions to vacate our decision and reconsider it in light of its holding in *Tirado.*

II.

**DISCUSSION**

1.      *The Trial Court Was Not Required to Instruct on Heat of Passion Voluntary Manslaughter.*

*Background*

Defendant requested instructions on voluntary manslaughter based on sudden quarrel or heat of passion as a lesser offense of murder. The trial court concluded there was no viable theory for voluntary manslaughter because of all the breaks in time and because defendant's own testimony was completely contrary to a theory of sudden quarrel, heat of passion. The court subsequently instructed the jury on first- and second-degree murder, as well as involuntary manslaughter.

Defendant argues the trial court erred in concluding there was "no viable theory for voluntary manslaughter" and in failing to instruct on the lesser included offense. Specifically, he claims that the failure to instruct on manslaughter constitutes federal

7

constitutional error because it relieved the prosecution of its burden to prove malice beyond a reasonable doubt. We disagree.

*Legal Principles*

On appeal, we review independently the question whether the trial court improperly failed to instruct on a lesser included offense. (*People v. Souza* (2012) 54 Cal.4th 90, 113.)

"'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.'" (*People v. Breverman* (1998) 19 Cal.4th 142, 154, quoting *People v. St. Martin* (1970) 1 Cal.3d 524, 531.)

The obligation to instruct on general principles includes the duty to give instructions on lesser included offenses when the evidence raises a question as to whether all elements of the charged offense were present, but not when there is no evidence that the offense was less than that charged. (*People v. Breverman, supra,* 19 Cal.4th at p. 154, citing *People v Hood* (1969) 1 Cal.3d 444, 449-450; *People v. Noah* (1971) 5 Cal.3d 469, 479; *People v. Osuna* (1969) 70 Cal.2d 759, 767.) "Such instructions [on lesser included offenses] are required when, but only when, a jury could reasonably conclude that the defendant committed the lesser offense but not the greater one." (*People v.*

*Hardy* (2018) 5 Cal.5th 56, 98, citing *People v. Breverman, supra,* 19 Cal.4th at pp. 161-162.)

Voluntary manslaughter is a lesser included offense of murder. (*People v. Duff* (2014) 58 Cal.4th 527, 561.) "Heat of passion, which likewise reduces murder to voluntary manslaughter, arises when the defendant is provoked by acts that would 'render an ordinary person of average disposition "liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgement'" [citation], and kills while under the actual influence of such a passion [citation]." (*Id.* at p. 562.)

A defendant must actually be motivated by passion in committing the killing. (*People v. Beltran* (2013) 56 Cal.4th 935, 951.) "'[I]f sufficient time has elapsed between the provocation and the fatal blow for passion to subside and reason to return, the killing is not voluntary manslaughter. . . . '" (*Beltran, supra,* at p. 951, citing *People v. Wickersham* (1982) 32 Cal.3d 307, 327, disapproved on another ground in *People v. Barton* (1995) 12 Cal.4th 186, 201.)

Here, the evidence is uncontradicted that after wrestling with the victim (over the victim's assault on defendant's girlfriend) for several minutes, defendant went down to the river because he felt a seizure coming on. By his own testimony, he was down at the river for about 20 to 30 minutes before returning to the camp. In the meantime, he had heard Renteria say either that "he's dead" or "he's gone," and when defendant returned to the camp 10 minutes after hearing that statement, he saw the victim lying helpless on the ground, covered with blood and not breathing. Defendant did not testify that he was still

9

upset or angry over the victim's assault on defendant's girlfriend, nor did he testify that he felt threatened by the victim.

While defendant described feeling "freaked out" when he told police investigating the crime that he had seen movement on the part of the victim as he lay on the ground, he did not describe any passion that would render an ordinary person of average disposition "liable to act rashly or without due deliberation and reflection," and killing under the influence of that passion. He certainly did not describe his actions at the time of the shooting as having been performed under heat of passion as he entered his tent to get his gun, and then returned to the victim to shoot him in the head. He had cooled off.

By a parity of reasoning, defendant could not rely on the victim's earlier assault on defendant's girlfriend as creating sufficient anger to mitigate the crime, warranting a voluntary manslaughter instruction, where the victim-aggressor had been rendered helpless before defendant returned to the camp and went for his gun. In any event, defendant's testimony, and his pretrial statements to police, that he shot the victim to put him out of his misery, precludes any notion that he was motivated by any desire to defend his girlfriend, or because he was "freaked out," when he obtained his rifle from his tent and then shot the helpless (and either dying or dead) victim in the head.

To suggest that defendant's actions were comparable to those of an ordinary person of average disposition is unreasonable. An ordinary person of average disposition, upon seeing a stabbing victim bleeding on the ground, does not get a rifle to finish him off. The average person of ordinary disposition would seek emergency

10

assistance for the victim, or so we hope. The fact that the defendant did not seek emergency assistance for the victim, and, instead, procured a rifle to put him out of his misery, speaks volumes about defendant's mental state at the time of the shooting. He intended to make sure the victim was dead.

Thus, the only evidence of defendant's mental state was that of premeditation and deliberation when he entered his tent, obtained the firearm, returned to where the victim lay, and shot him in the head. There is no evidence that the offense was less than that charged. (*People v. Breverman, supra,* 19 Cal.4th at p. 154.) There was no error in refusing to instruct the jury on the theory of heat of passion voluntary manslaughter.

2.     *The Trial Court Properly Considered Defendant's Inability to Pay in Ordering the Minimum Restitution Fine.*

Defendant argues that the $300 restitution and parole revocation restitution fines (§§ 1202.4, subd. (b), 1202.45), the $40 court operations fee (§ 1465.8), and the $30 court facilities fee (Govt. Code, § 70373) must be vacated because the imposition of those fees violated his due process rights.

Defendant acknowledges that the court did make a finding that he lacked ability to pay for the preparation of the probation report, the booking fee, and the presentence incarceration costs; he also acknowledges that he failed to object to the imposition of the restitution fines. Nevertheless, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), he argues that the court improperly imposed the additional fines and fees. We disagree.

11

*Restitution Fines*

We begin by noting that while *Dueñas* and other recent decisions have treated restitution fines as comparable to the various fees imposed for court operations, probation report preparation and court facilities fees, they are not equivalent, and must be treated differently. The imposition of a restitution fine is punishment. (*People v. Allen* (2019) 41 Cal.App.5th 312, 321, citing *People v. Guillen* (2013) 218 Cal.App.4th 975, 984.) Court fees are not. (*People v. Alford* (2007) 42 Cal.4th 749, 757; see also *People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1112.) Because the restitution fine is intended as punishment, it is subject to challenge under the excessive fines clause of the Eighth Amendment of the federal Constitution and article I, section 17 of the California Constitution. However, the trial court's authority to consider a defendant's ability to pay is limited.

It has long been held that the law mandates the sentencing court to impose a restitution fine of at least the statutory minimum and is not required to make a finding of a defendant's ability to pay before imposing the statutory minimum fine. (§ 1202.4, subd. (c); *People v. Avila* (2009) 46 Cal.4th 680, 729.) In fact, the statute expressly states that inability to pay is not a compelling and extraordinary reason not to impose a restitution fine. (§1202.4, subd. (c).) Because the court imposed the statutory minimum restitution fine, no ability to pay hearing was required. (§ 1202.4, subd. (d); *People v. Wall* (2017) 3 Cal.5th 1048, 1076, citing *People v. Covarrubias* (2016) 1 Cal.5th 838, 935-936.)

An ability-to-pay hearing is required only where the court imposes a restitution fine exceeding the statutory minimum. (§ 1202.4, subd. (c); *In re Enrique Z.* (1994) 30 Cal.App.4th 464, 468-469.) As the trial court is not required to make express findings concerning a defendant's ability to pay a restitution fine, the absence of findings does not demonstrate it failed to consider this factor. (*People v. Nelson* (2011) 51 Cal.4th 198, 227, citing *People v. Gamache* (2010) 48 Cal.4th 347, 409.) We disagree with the conclusion that there is a due process requirement that the court hold an ability to pay hearing before imposing a minimum restitution fine.

Additionally, defendant has forfeited any objection to the imposition of the restitution fine and the parole revocation restitution fine by failing to object at the sentencing hearing. (*People v. Gamache, supra,* 48 Cal.4th at p. 409; *People v. Jenkins* (2019) 40 Cal.App.5th 30, 40; *People v. Forshay* (1995) 39 Cal.App.4th 686, 689; *People v. Gibson* (1994) 27 Cal.App.4th 1466, 1468-1469.)

The decision in *Dueñas* broke with longstanding precedent in requiring the court to consider ability to pay before imposing the statutory minimum restitution fine and permitting an appellate challenge to the fine absent an objection in the trial court. The decision also ignores precedents holding that section 1203.4 presumes a defendant has the ability to pay the fine (*People v. DeFrance* (2008) 167 Cal.App.4th 486, 505, citing *People v. Romero* (1996) 43 Cal.App.4th 440, 448), and that the court is not required to make express findings on that issue. (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1836.)

13

Subsequent to the *Dueñas* decision, on September 18, 2020, the Governor signed Assembly Bill No. 1869. Effective July 1, 2021, Assembly Bill No. 1869 "eliminate[d] the range of administrative fees that agencies and courts are authorized to impose to fund elements of the criminal legal system and . . . eliminate[d] all outstanding debt incurred as a result of the imposition of [identified] administrative fees." (Stats. 2020, ch. 92, § 2; *People v. Greeley* (2021) 70 Cal.App.5th 609, 625.)

Respecting restitution fines, the Legislature did not substantively modify section 1202.4 in the 2021 amendments. Section 1202.4 continues to mandate imposition of restitution fines of at least $300, unless compelling reasons were found by the trial court and stated on the record. Effective January 1, 2022, the statute still requires a trial court to impose a restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record. It further provides that the restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, and, if the defendant has been convicted of a felony, the fine shall not be less than three hundred dollars ($300). (§ 1202.4, subd. (b)(1), added by Stats. 2021 ch 257 §19 (AB 177), effective September 23, 2021, operative January 1, 2022.)

Under well-settled rules of statutory construction, ""'[t]here is a strong presumption that when the Legislature reenacts a statute which has been judicially construed it adopts the construction placed on the statute by the courts.'" [Citation.] That is because, [w]hen the Legislature amends a statute without changing those portions . . . that have previously been construed by the courts, the Legislature is

presumed to have known of and to have acquiesced in the previous judicial construction.'" [Citation.]" (*Sharon S. v. Superior Court* (2003) 31 Cal 4th 417, 433-434.)) Thus, imposition of the minimum restitution find was mandatory in the absence of compelling reasons stated on the record.

We therefore decline to follow *Dueñas* as it pertains to the imposition of a statutorily minimum restitution fine.

*Court Facilities Fee*

As for the court facilities fee pursuant to Government Code, section 70373, the issue was not forfeited by defendant's failure to object, and may be reviewed pursuant to *Dueñas*.[2] (See *People v. Johnson* (2019) 35 Cal.App.5th 134, 138; but see *People v. Frandsen, supra,* 33 Cal.App.5th at p. 1153.) However, that does not mean remand is required.

The record does not establish that defendant has a present inability to pay. While he was homeless at the time of the offense, and has since been committed to state prison, this circumstance does not necessarily establish an inability to pay absent evidence he is ineligible for prison work programs. (See *People v. Gamache, supra,* 48 Cal.4th at p. 409.) A court may consider a defendant's ability to earn prison wages in determining ability to pay. (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1035.)

---

[2] Government Code section 70373, governs assessments imposed respecting fines. Although amended in 2021 (Stats. 2021, ch. 79, Assm. Bill No. 143), no substantive changes were made.

As defendant will be serving a lengthy prison sentence and the amount of the fees is small, it is appropriate for the court to consider the wages that he may earn in prison. (See *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837 [ability to pay includes a defendant's ability to obtain prison wages]; § 2085.5 [outlining how a restitution fine balance may be collected from prison wages].) Absent evidence defendant is not eligible for work while committed to state prison, he has not met his burden of establishing his inability to pay. (See *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035.)

Nevertheless, because defendant's case will be remanded for resentencing pursuant to the Supreme Court's recent holding in *People v. Tirado, supra*, 12 Cal.5th 688 (see Issue No. 3, *post*), the trial court may also reconsider the fines and fees imposed. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893; see also *People v. Nilsson* (2015) 242 Cal.App.4th 1, 34 [full resentencing includes consideration of fines, fees, and restitution].)

Thus, while remand is unnecessary, the trial court may reconsider its decision in resentencing defendant.

3.      *The Matter Should be Remanded to the Trial Court to Consider Whether to Strike or Impose the Gun Discharge Enhancement, or Whether to Impose a Lesser Included Enhancement..*

At trial, the jury made a true finding on the gun discharge enhancement allegation pursuant to section 12022.53, subdivision (d). In supplemental briefing in the original appeal, defendant argued that the gun discharge enhancement pursuant to section

12022.53, subdivision (d), must be reversed and remanded because the trial court did not understand that the extent of its discretion included the discretion to impose a lesser enhancement pursuant to either section 12022.53, subdivision (b) or (c). At that time, the People argued the issue was forfeited by defendant's failure to request that the trial court exercise its discretion respecting the enhancement.

Also at that time, the Supreme Court was considering this issue in *People v. Tirado*. That opinion has now issued, resulting in the Supreme Court's order vacating our opinion with directions that we reconsider the issue in light of the new precedent.

Prior to 2017, section 12022.53, subdivision (h), prohibited the trial court from striking an allegation under the section or a finding bringing a person within the provisions of the section, notwithstanding section 1385. (Former § 12022.53, subd. (h).) However, in 2017, the Legislature enacted Senate Bill 620 (Stats. 2017, ch. 682 § 2, pp. 5104-5106, eff. Jan. 1, 2018, amending §§ 12022.5 and 12022.53). The Legislative Counsel's Digest explains that SB 620 "would delete the prohibition on striking an allegation or finding and, instead, would allow a court, in the interest of justice and at the time of sentencing or resentencing, to strike or dismiss an enhancement otherwise required to be imposed . . . ."

Notably, both the current and former versions of subdivision (h) of section 12022.53 referred to a trial court's discretion to dismiss or strike pursuant to section 1385. The power to dismiss an action includes the power to dismiss or strike an enhancement. (*People v. Thomas* (1992) 4 Cal.4th 206, 209; *People v. Luckett* (1996) 48

17

Cal.App.4th 1214, 1218.) As a consequence, prior to the decision in *Tirado,* courts have treated the court's authority pursuant to section 1385 to be binary and, based on the state of the law at the time, in the original appeal we held that the power to dismiss or strike does not necessarily include a broad discretion to impose a lesser enhancement. We reasoned that the power to dismiss or strike did not necessarily include a broad discretion to impose a lesser enhancement, noting that nothing in the language of section 1385, nor in the cases interpreting the trial court's discretionary authority, refers to a court's discretion to impose a lesser enhancement, *except* "when a greater enhancement found true by the trier of fact is either legally inapplicable or unsupported by sufficient evidence." (*People v. Fialho* (2014) 229 Cal.App.4th 1389, 1395-1396 [§ 12022.53 enhancement precluded by conviction of offense not listed in § 12022.53, subd. (a)]; *People v. Strickland* (1974) 11 Cal.3d 946, 961; *People v. Lucas* (1997) 55 Cal.App.4th 721, 743; *People v. Allen* (1985) 165 Cal.App.3d 616, 627 [armed enhancement per § 12022 imposed where § 12022.5 did not apply to conviction]; *People v. Dixon* (2007) 153 Cal.App.4th 985, 1001-1002 [§ 12022, subd. (b) deadly weapon enhancement substituted for § 12022.53, subd. (b) where BB or pellet gun was used and did not qualify as a firearm under the statute].)

Citing these authorities, Division Five of the Court of Appeal, First Appellate District held that the amendment to section 12022.53, subdivision (h), conferred on trial courts the authority to impose lesser enhancements in the exercise of the court's discretion. (*People v. Morrison, supra,* 34 Cal.App.5th at p. 222.) With the split of

18

authority among the appellate districts, the Supreme Court granted review in *People v. Tirado, supra,* formerly at (2019) 38 Cal.App.5th 637, 644, review granted Nov. 13, 2019, S257658 [no change in publication status per Cal. Rules of Court, rule 8.1105(e)(1)(B)]), which had relied on *People v. Birks* (1998) 19 Cal.4th 108, 134.

In *Tirado,* the Supreme Court agreed that *Morrison* correctly described the scope of the trial court's discretion pursuant to section 12022.53. (*Tirado, supra,* 12 Cal.5th at p. 697.) The court agreed that it is the prosecution that determines what charges should be brought and against whom. (*Id.,* at p. 702, citing *Birks*, *supra*, 19 Cal.4th at pp. 134–135.) It also acknowledged that the prosecutorial prerogative "includes the power to charge specific enhancements and seek the maximum available term [citation] free from judicial supervision or interference." (*Tirado, supra*, at p. 702)

However, the Supreme Court held that "once those decisions have been made and the proceedings have begun, 'the process which leads to acquittal or to sentencing is fundamentally judicial in nature.' [Citation.] The prosecution cannot control the court's authority to select from the *legislatively authorized* sentencing options." [Citation.]" (*Tirado, supra*,12 Cal.5th at p. 702.)

In light of the holding in *Tirado*, the People agree that remand for resentencing is appropriate, to give the superior court the opportunity to exercise its sentencing discretion. Nothing we have stated in this opinion is intended to direct the superior court to exercise its discretion in any particular manner.

## III.

### DISPOSITION

The sentence is reversed and remanded to the superior court for resentencing, at which hearing the trial court may exercise its discretion to strike the gun discharge enhancement or to impose a lesser included enhancement, or to reimpose the enhancement as found true by the jury. The court may also reconsider the fines and assessments imposed. In all other respects, the judgment of conviction is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

I concur:

MILLER
J.

20

[*People v. Richard Valles*, E071361]

MENETREZ, J., Concurring.

I concur in the majority opinion except for Part 2 of the Discussion. Because defendant will have the opportunity to raise his ability to pay arguments in the trial court at resentencing, I would express no opinion on them in this appeal.

MENETREZ          

J.

1