Filed 4/27/22  P. v. Lipsey CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>CHRISTOPHER LIPSEY,<br><br>     Defendant and Appellant. | F080784<br><br>(Kings Super. Ct. No. 17CMS3190)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kings County.  Michael J. Reinhart, Judge.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, Daniel B. Bernstein, and Jennifer M. Poe, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Appellant and defendant Christopher Lipsey, who was serving a life term in the California Department of Corrections and Rehabilitation (CDCR), was convicted after a jury trial of violating Penal Code[1] section 4501, subdivision (a), assault with a deadly weapon by a state prison inmate. He was sentenced to the second strike term of 22 years, consecutive to the indeterminate term he was already serving.

On appeal, defendant argues he could not be convicted of violating section 4501 because he was serving a life term at the time of the offense; that statute is not applicable to inmates serving life terms; and his conviction must be reduced to the lesser included offense of assault with a deadly weapon in violation of section 245, subdivision (a)(1). He also argues the trial court should have granted his section 1381 motion to dismiss the information because the district attorney did not timely file charges against him. Defendant further asserts the court improperly imposed a restitution fine and other fees without determining his ability to pay, and the matter must be remanded for resentencing because of the recent enactment of Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567), that amended the sentencing provisions of section 1170.

We find the trial court properly denied defendant's motion to dismiss. However, we are compelled by *People v. Noah* (1971) 5 Cal.3d 469 (*Noah*) to find that defendant's conviction for violating section 4501, subdivision (a) must be reduced to the lesser included offense of assault with a deadly weapon. Defendant's sentence will be vacated, and the matter remanded for resentencing for that reason, and also because of the enactment of Senate Bill 567. Since the matter must be remanded for a new sentencing hearing, we need not address defendant's contentions about the restitution fine and fees.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

2.

## FACTS

**Prior Interaction with Sergeant Parra**

Defendant was an inmate at the Corcoran State Prison.  On July 5 or 11, 2015 (RT 775, 780-781), around 11:00 p.m., Sergeants Payan and Parra were on duty in the unit where defendant was housed.  The officers checked each cell every 30 minutes.  Payan noticed defendant had used a sheet to cover his cell door.  Payan contacted defendant and asked why he did that.  Defendant replied that Parra was shining his flashlight on his face.  Defendant said he would only remove the obstruction if Parra was moved to another cell block.

Sergeant Parra testified when he conducted his cell check, defendant's cell door was still covered with a sheet.  Parra aimed his flashlight into the cell, told defendant to remove the sheet, and defendant refused.  When Parra returned for the next two checks, the sheet was covering the door and defendant would not respond.  One week later, when Parra was again on duty to conduct security checks, defendant again covered his door with a sheet and refused to respond.  Parra testified he had no further problems with defendant until the charged incident occurred.

**The Charged Incident**

On July 8, 2016, defendant was housed by himself in a cell located in a locked down unit for the Enhanced Outpatient Program (EOP).  The inmates in this unit are considered high risk and dangerous to others and may have mental issues and receive psychotropic medications.  The same unit also contained administrative segregation cells for inmates with disciplinary problems.

Around 6:00 p.m., Officers Hernandez and Maciel were instructed to remove defendant from his cell because he was going to see a psychiatrist.  The officers opened the food port in the cell's door and instructed defendant to put his back to the door, place his hands behind his back, and put his hands through the food port.  Defendant complied, and the officers placed him in doubled locked handcuffs behind his back.

3.

Officer Hernandez testified they escorted defendant to a holding cell in another location but in the same unit and placed him there by himself. The holding cell was secured by a padlock. Hernandez believed Officer Maciel secured the holding cell's padlock. Defendant was still restrained with his arms behind his back when they left him in the holding cell.

Sergeant Parra testified he saw defendant in the holding cell while he was making his rounds. Defendant's hands were restrained behind his back. Parra and defendant did not speak to each other. Officer Pimentel also saw defendant in the holding cell, and defendant's hands were cuffed behind his body.

**Defendant Escapes and Throws the Chair**

There was an area adjacent to the holding cells where there were tables and chairs for the correctional officers to have their meals and write reports. The table area was separated from the holding cells by a partition that was about four feet high. A television was mounted to the wall above the tables.

Officer Hernandez testified that after he saw defendant in the holding cell, he sat down at the table area with Sergeant Parra and Officers Pimentel and Maciel. Parra was seated with his back to the partition, and he was writing a report and eating.

Sergeant Parra testified he suddenly felt a hard impact on his head and upper back. Parra testified a metal chair "rolled off the back of my head" and landed about 10 feet away from him. Parra looked behind him and saw defendant standing behind the partition and staring at him. Both of defendant's hands were cuffed together but they were in front of his body. Defendant headed toward another section of the unit. Parra ordered him to stop, but defendant failed to obey his order and kept going.

Officer Pimentel saw the chair fly over the partition, directly towards the table and in Officer Parra's location.

Officer Hernandez heard a metal chair hit the floor. He looked to his left and saw the chair bounce on the floor. Hernandez saw defendant run toward another section of

the unit and realized he had escaped from the holding cell. Officers Hernandez and Pimentel chased defendant; defendant eventually obeyed their orders and dropped to the floor. He was retaken into custody without further incident and placed in a different holding cell.

Officer Pritchard testified he was present when defendant was in holding cell after he was recaptured. In a very loud voice and in an aggressive manner, defendant said, " 'I got that motherf[**]ker and I will get these bitches, too.' "

Officer Pimentel testified none of the officers involved in initially placing defendant in the holding cell took responsibility for failing to secure the lock on the cell door, perhaps because the officer would have been disciplined or lost his job.

**Sergeant Parra's Injuries**

Sergeant Parra testified that as a result of the blow, he felt dizzy and was bleeding from the back and side of his head. He was taken by ambulance to the hospital and treated in the emergency room. He had a two-inch laceration on the back right side of his head, and nine staples were required to close the wound. He was placed in a neck brace and given pain medication. At the time of trial, Parra still had a scar from the incident.

**Defense Evidence**

Defendant testified at trial and admitted he was convicted of robbery for stealing a cell phone in 2006, but he thought it was just a theft offense. He was convicted of attempted murder for shooting someone with a gun in 2009 and had been imprisoned since that time.

Defendant testified that he had been admitted to a suicide bed more than 20 times prior to this incident. Defendant was told he was bipolar and had schizoaffective disorder. He saw a psychiatrist every day and received psychotropic drugs.

On the day of the charged offense, defendant was housed in a unit where he received treatment for his mental health issues. He was depressed, unable to sleep, and stressed out because his father had died a few days earlier. He informed a watch officer

5.

about how he was feeling and asked to see a psychiatrist, but no one came to see him. Defendant remained in his cell but was able to contact another inmate with a "fishing line," and asked for some pills. The other inmate passed some pills to him. Defendant took 20 to 30 pills and tried to kill himself because no one was helping him. He did not know what kind of pills he swallowed.

About three hours later, defendant told the watch officer during the next welfare check that he was feeling suicidal. Defendant was placed in handcuffs and escorted to the holding cell, where he stayed for several hours. A female psychiatrist eventually arrived and asked if he tried to harm himself. Defendant told the psychiatrist how he felt and that he had taken about six pills. The psychiatrist told defendant that he needed to be admitted to "suicide watch" again and left to prepare the paperwork.

Defendant testified that the holding cell was located near the officers' table area, and a television was mounted on the wall above the tables. While he waited for the psychiatrist to return, defendant realized the television sound was too loud, and it was bothering him. Defendant also started to feel the effects from the pills; his heart was beating hard, his throat tightened, and he had trouble breathing. Defendant asked Officer Pimentel to turn down the sound on the television. Pimentel turned up the volume and asked, " 'Is this low enough?' " Defendant became angry but decided to let it go.

Defendant testified his hands were cuffed behind his back. He admitted that he flipped the handcuffs under his feet, so that his hands were in front of his body but still restrained. He did so because he wanted to use his hands to cover his ears to block out the loud sound from the television. When he sat down and put his legs in front of him to flip the handcuffs, the door to the holding cell "just came open." Defendant believed the officer did not secure the lock.

Defendant testified that he had been in the holding cell for about two hours and decided to walk out. There was a chair near the cell door that the psychiatrist had used when she talked to him. Defendant did not walk around the partition to shut off the

6.

television because the officers would "slam[]" him and claim that he tried to assault them. He grabbed the chair, intending to throw it at the television to break it, so he could get the officers' attention and get medical assistance and to stop the noise.

Defendant testified he also heard a sound before he threw the chair: "I don't know if it's a voice or not, but it's like a sound and it like directs me into certain things. And visually it was … my vision was blurred. And I was feeling like how you feel when you are real drunk."

Defendant grabbed the top of the chair, spun around, threw it over the top of the partition, and aimed it at the television. Defendant admitted that he saw the officers sitting at the tables before he threw the chair, knew the tables were just a few feet away from him, and he saw the chair hit Sergeant Parra. He thought the pills affected his accuracy and that is why he did not hit the television.

Defendant testified that he got scared and insisted that he did not run away. Instead, he "immediately put my hands up and then just laid down." However, he admitted he "moved a little bit because it was like, some lockers and other stuff right there, so I knew they weren't going to be able to see what I was doing, so I moved more towards like the middle of the day room in C Section and proned out so they can know that I wasn't trying to be aggressive and that was an accident." Defendant testified he obeyed the officers' orders to get down and was taken back into custody.

Defendant testified that after he threw the chair, he recovered from the effects of the pills and remembered what happened. Defendant did not intend to hit Sergeant Parra with the chair, he had no animosity toward him, and he did not know Parra was in the area. "I knew that … I messed up big time."

After he was restrained, defendant was put into a different holding cell and received a medical evaluation. Defendant denied making the statement, " 'I got that motherf[**]ker and I will get these bitches, too.' "

7.

**Rebuttal Evidence**

Dr. Brandy Mathews, a licensed psychologist who worked at Atascadero State Hospital, testified that she reviewed defendant's records and the circumstances of the charged offense. Dr. Matthews determined that shortly before defendant threw the chair, a psychologist evaluated him, and defendant reported some suicidal ideation. The psychologist decided to refer him to a bed in the mental health crisis unit. The incident reports stated that immediately after throwing the chair, defendant ran away and tried to hide. A security videotape showed that immediately after the incident, when defendant was retaken into custody, he made a few statements that "possibly could have been evidence of a level of psychosis, but the majority of the interaction he was coherent and provided relevant and rational responses," and the video showed he was calm, cooperative, and aware of what was going on.

Dr. Matthews met with defendant and conducted an evaluation in May 2018. He reported a history of prior psychiatric symptoms and treatment. He did not display or report any psychiatric symptoms, and he did not report taking any medications prior to the charged offense.

Dr. Howard Terrell, a psychiatrist, testified that he was appointed by the court to examine defendant and reviewed his records and the reports. The reports about defendant's statements and conduct before and after the incident, including how he tried to hide by the lockers after he threw the chair, showed that he understood what he was doing at the time and knew it was wrong.

Dr. Terrell testified that even if defendant immediately got on the floor and "proned" out, that also showed he understood that he was in trouble. Defendant's statement after the incident, " 'I got the motherf[**]ker, I will get you bitches, too,' " also showed that he knew what he had done, and that he made further threats of harm. His statements were inconsistent with being psychotic and irrational. "[S]omeone making a statement of an antisocial nature of getting one person and then talking about getting,

presumably in the same manner, in a violent manner, to get other people too tells me that the person knows that they have harmed someone and threatening to harm others as well."

Dr. Terrell also met with defendant, who said that he felt the television by the holding cell was "sucking" him in; he thought the television was "a black hole," and he was getting smaller and shrinking. Defendant said that he was not trying to hit the officer with the chair, and it was an accident. Dr. Terrell discounted defendant's claims of hallucinations as consistent with malingering.

Dr. Terrell considered defendant's report that he had taken several pills before throwing the chair, but defendant did not clarify what kind of pills he had consumed and refused to take any tests to confirm the drug use. "But to just suddenly have a very brief episode from medication and then within seconds to minutes be normal, that I can't think offhand what medication that would make you psychotic in one moment and then seconds to a few minutes later be rational."

Dr. Terrell testified to his opinion that defendant suffered from an unspecified personality disorder. Defendant had "antisocial personality traits where he has a history of violating rules and laws and being arrested and incarcerated, being a gang member as a teenager, acts of criminal activity…. But also it is my understanding that he has had episodes of either acting or reporting being suicidal, a history of abusing street drugs, a history of being manipulative and I think that speaks more to his borderline personality type personality makeup." Defendant also had a stimulant use disorder based on his heavy use of street drugs, including methamphetamine, when he was not in custody. Such drugs make a person behave very irrationally and violently, and in a psychotic manner. It is not unusual for inmates to obtain methamphetamine in prison, and such use would exacerbate the disorder.

## PROCEDURAL BACKGROUND

On November 30, 2017, the information was filed that charged defendant with count 1, assault with a deadly weapon, a metal chair, by a prisoner (§ 4501, subd. (a)), with two prior serious felony conviction enhancements (§ 667, subd. (a)) and two prior strike convictions.

On December 1, 2017, defendant pleaded not guilty. On January 18, 2018, defendant withdrew his prior plea of not guilty and pleaded not guilty by reason of insanity. The court appointed Drs. Terrell and Matthews to examine defendant. On March 8, 2018, the court read and considered the experts' reports and found defendant was legally sane at the time of the charged offense. Defense counsel requested a jury trial on sanity.

On April 24, 2019, a first amended information was filed that again charged defendant with violating section 4501, subdivision (a), with two prior strike convictions and two prior serious felony enhancements, with corrections of the alleged dates. The court heard and denied defendant's section 1381 motion to dismiss.[2]

On September 23, 2019, defendant's jury trial began. Defendant did not bifurcate the prior conviction allegations. On September 25, 2019, defendant withdrew his plea of not guilty by reason of insanity.

**Conviction and Sentence**

On September 25, 2019, defendant was convicted as charged, and the jury found true the prior conviction allegations.

On September 27, 2019, the court heard and granted defendant's motion to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806.

---

[2] In part II. of the Discussion, *post*, we will discuss defendant's contentions about the trial court's denial of his section 1381 motion to dismiss.

On January 21, 2020, the court held the sentencing hearing. Defendant represented himself, with his prior attorney as standby counsel.

Defendant requested the court dismiss both prior strike convictions and both prior serious felony conviction enhancements. The court dismissed his prior strike conviction for robbery and denied defendant's request to dismiss his prior strike conviction for attempted murder and both of the prior serious felony conviction enhancements. The court stated that it decided to dismiss one prior strike conviction because an aggregate third strike term of 35 years to life "would be far too disproportional to the offense in this matter and the psychiatric conditions."

The court stated it intended to impose an aggregate second strike sentence of 22 years based on the upper term plus the enhancements.

> "Now the aggravating factors which is why I selected the upper term include the numerous prior prison commitments prior to this prison commitment and the violent nature of your past three convictions. I'm also taking into consideration that even though a [great bodily injury enhancement] wasn't sought in this case, the evidence before the Court would support such a finding. And that gives recognition to the – again, the serious nature of this offense. Parenthetically if you add the 47 years you're doing now plus the 22 years I am just imposing minus the 10 years you've already served, this, even with good and work time, is a long time in prison. So that would satisfy this Court as to the protection of the public. Absent some extraordinary circumstances you will be well into your 70s before being considered to be released."

Defendant again asked the court to dismiss the section 667, subdivision (a) enhancements. The court stated it was aware of its discretion but declined to strike the enhancements because "you should be held accountable for your prior record, not only as an aggravating factor, but in those findings for the enhancements that were found for

11.

each prior. The only thing I struck was just the single [section] 211 [prior conviction for robbery] as a strike, again, not as the enhancement under [section] 667."[3]

The court sentenced defendant to the aggregate term of 22 years, based on the upper term of six years for count 1, doubled to 12 years as the second strike term, plus two consecutive terms of five years for the two section 667, subdivision (a) enhancements, to be served consecutively to the indeterminate sentence he was already serving.

The probation report recommended a restitution fine of $10,000. Defendant objected to the probation report's recommendation and said he had previously been ordered to pay a $1,200 restitution fine, and "I'm still not done paying that after 12 years."

The court stated it was not going to impose a "penal fine" or the amount recommended in the probation report. The court imposed a restitution fine of $300 (§ 1202.4, subd. (b)), stayed the parole revocation fine of $300 (§ 1202.45), and also imposed a court facilities fee of $30 (Gov. Code, § 70373) and a court operations fee of $40 (§ 1465.8).

On February 14, 2020, defendant filed a notice of appeal.

## DISCUSSION

### I. Defendant's Conviction for Violating Section 4501

Defendant contends his conviction for violating section 4501, subdivision (a) is invalid as a matter of law because he was serving a life term at the time of the charged offense, and a person serving a life term cannot be convicted of violating section 4501. Defendant's argument is based on *Noah, supra,* 5 Cal.3d 469, which interpreted the 1971 version of the statute. Defendant contends that, as in *Noah*, his conviction must be

---

[3] The court also denied defendant's motion to reduce his felony violation of section 4501 to a misdemeanor. A violation of section 4501 is a felony offense. (§ 4501, subd. (a).)

12.

reduced to the lesser included offense of assault with a deadly weapon in violation of section 245, subdivision (a)(1), and the matter remanded for resentencing. Defendant raises an alternative claim of ineffective assistance for counsel's failure to raise this issue at trial.

The People argue defendant's conviction was legally valid based on subsequent amendments to section 4501 that have undermined the holding in *Noah*.

We agree with defendant that we are bound by *Noah* and will reduce his conviction to the lesser included offense of assault with a deadly weapon.

**A.** *Noah*

Defendant's argument is based on *Noah*, where the two defendants – Noah and Meyers – were state prison inmates, and Meyers was serving a life term. Both defendants were charged with violating section 4500, which at that time stated in relevant part:

> " 'Every person *undergoing a life sentence in a state prison* of this state, who, *with malice aforethought*, commits an assault upon the person of another, other than another inmate, with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death; however, in cases in which … the person … assaulted is another inmate, the punishment shall be death or imprisonment in the state prison for life without possibility of parole for nine years, at the discretion of the court or jury trying the same.…' " (*Noah, supra*, 5 Cal.3d at p. 474, italics added.)

"The trial court instructed the jury that violation of section 4500 necessarily include[d] as a lesser offense violation of section 4501. The trial court also instructed the jury that if there was a reasonable doubt as to whether defendant Meyers had the mental capacity to harbor malice[,] he could not be found guilty of malicious assault by a life prisoner, but the court refused to give Meyers'[s] proffered instruction that he could nevertheless be found guilty of battery or felonious assault or to give instructions defining those offenses." (*Noah, supra*, 5 Cal.3d at pp. 474–475.)

Both defendants were convicted of the lesser offense of section 4501. (*Noah, supra*, 5 Cal.3d at p. 472.) At that time, section 4501 stated in relevant part:

> " 'Every person confined in a state prison of this state *except one undergoing a life sentence* who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury, shall be guilty of a felony and shall be imprisoned in the state prison not less than three years.' " (*Noah, supra*, at 5 Cal.3d p. 475, italics added in original.)

On appeal, defendant Meyers argued that "as a prisoner serving a life term at the time of the offense, he cannot be properly convicted of violating section 4501 and that the trial court's instruction to the jury that section 4501 was a lesser included offense within section 4500 was, therefore, erroneous as to him." (*Noah, supra*, 5 Cal.3d at pp. 472–473, fn. omitted.)

*Noah* agreed and held section 4501 was "applicable only to persons serving a term of less than life imprisonment and that the judgment of conviction of defendant Meyers must, therefore, be modified .…" (*Noah, supra*, 5 Cal.3d at p. 473.) In reaching this conclusion, *Noah* held the legislative history of section 4501 showed that the statutory language, " 'except one undergoing a life sentence,' " defined an affirmative defense. (*Id.* at p. 475, italics omitted.)

> "[F]ormer section 246[] was reenacted in 1941 as the present section 4500. Then, as now, the section applied only to life prisoners who committed an aggravated assault with malice aforethought. In 1937, the Legislature enacted former section 246a, the forerunner of the present section 4501, which provided: 'Every person undergoing a sentence of less than life in a State prison of this State, who, with malice aforethought commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury shall be guilty of a felony and shall be imprisoned in the State prison not less than one year.' [Citation.] [¶] Like section 246, *section 246a was enacted for the purpose of promoting prison safety and was clearly intended to apply only to prisoners serving a sentence of less than life*. At the time of its adoption both sections 246 and 246a prohibited identical conduct. The distinction between the two sections lay only in the status of the prisoner who

14.

committed the assault and the provision of a lesser penalty for prisoners serving a sentence of less than life.  [Citation.]

> "In 1941, former sections 246 and 246a were repealed and reenacted as sections 4500 and 4501, respectively.  [Citation.]  *In 1959, the Legislature amended section 4501 to eliminate the requirement of malice aforethought [citation], but the language making the statute applicable to, 'Every person undergoing a sentence of less than life ...,' remained unchanged.*  Finally, in 1963, the Legislature adopted the present language by amending section 4501 to read:  'Every person confined in a state prison of this state except one undergoing a life sentence....'  [Citation.]  The 1963 amendment, however, was not intended to change the law but only to make it clear that the section applied to everyone *confined* in a state prison.  [Citations.]  Thus, our determination in *In re Smith* [(1966)] 64 Cal.2d 437, 440, footnote 1, that 'section 4501 of the Penal Code does not apply to persons undergoing a life sentence,' although expressed in an opinion considering a pre-1963 violation of the section, is equally applicable to offenses that occurred subsequent to that amendment."  (*Id.* at pp. 475–476, first italics added, last italics in original, fn. omitted.)

*Noah* held that a defendant's service of a life term at the time he committed the charged offense constituted an affirmative defense to a charged violation of section 4501:

> "Inasmuch as section 4501 is applicable *only to prisoners serving a sentence of less than life*, the status of a defendant as one who is serving a life sentence is a defense which he may assert if charged with violation of section 4501.  [Citation.]  It follows that when an information or indictment alleges a violation of section 4500, and by so doing alleges that the defendant is serving a life term, section 4501 cannot be a necessarily included offense in fact, since an offender who violates section 4500 cannot violate section 4501.  [Citation.]  *Furthermore, since a conviction for violation of section 4501 requires an affirmative finding by the trier of fact that the defendant is not serving a life sentence, the section cannot be considered a lesser degree of the offense set forth in section 4500.*  [Citation.]  [¶]  Stated in other language, the elements of the offense set forth in section 4500 are:  (1) an aggravated assault; (2) by a state prisoner; (3) serving a life term; (4) with malice aforethought.  The elements of the offense set forth in section 4501 are:  (1) an aggravated assault; (2) by a state prisoner; (3) *who is not undergoing a life sentence.  Since it is undisputed that defendant ... was undergoing a life sentence at the time of the offense, the trial court's instruction to the jury that he could be found guilty of violating section 4501 if there was a reasonable doubt as to his*

*ability to harbor malice was erroneous*." (*Noah, supra*, 5 Cal.3d at pp. 476–477, italics added, fn. omitted.)

*Noah* held defendant Meyers was improperly convicted of violating section 4501 since it was undisputed that he was serving a life term at the time of the offense. *Noah* modified the judgment "since in finding him guilty of violating section 4501, the jury had to find that all of the elements of a violation of section 245, subdivision (a), a necessarily included offense, were also present. The evidence amply sustains conviction of assault by means of force likely to produce great bodily injury in violation of section 245, subdivision (a), and permits modification of the judgment to that effect. [Citation.]" (*Noah, supra*, 5 Cal.3d at p. 477, fn. omitted.) In reaching this holding, *Noah* acknowledged that it was "[a]n anomalous result, one probably unintended by the Legislature, *but which this court is powerless to correct … that a nonmalicious aggravated assault by a person serving a life sentence is punishable only under … section 245, subdivision (a)*, for which the minimum term of imprisonment … is shorter than that imposed for violation of section 4501 by persons serving a term of less than life. Thus, the deterrent purpose of punishing life prisoners, who would otherwise feel they had little to lose, more heavily than nonlife prisoners who commit similar offenses in prison, is not fully served." (*Noah, supra,* 5 Cal.3d at p. 477, fn. 5, italics added.)

Finally, *Noah* addressed defendant Meyer's alternate argument that the trial court erroneously denied his requests to instruct on the lesser included offenses of assault with a deadly weapon or by means of force likely to produce great bodily injury, battery, and simple assault. (*Noah, supra*, 5 Cal.3d at p. 478.) *Noah* held "[t]he elements of the offenses set forth in sections 4501 and 245, subdivision (a), are identical in all respects except that section 4501 requires, as an additional element, that the defendant be a prisoner confined in a state prison." (*Id.* at p. 479.)[4]

---

[4] At the time of the offense, section 245, subdivision (a) stated: " 'Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by

16.

*Noah* held that as to defendant Meyers, the trial court committed error by refusing to instruct on the lesser included offense of assault by means of force likely to produce great bodily injury, but the error did not require reversal since the court was already modifying his section 4501 conviction to a violation of section 245, subdivision (a). (*Noah, supra*, 5 Cal.3d at p. 478.) As to defendant Noah, since he "requested and received an instruction that he was not undergoing a life sentence and thus could properly be convicted of violating section 4501, the refusal to instruct on assault with a deadly weapon was not erroneous as to him." (*Id*. at p. 479.)

### B. *Section 4501*

In order to address defendant's appellate contentions, we begin with the version of section 4501 that *Noah* interpreted in 1971:

> " 'Every person confined in a state prison of this state *except one undergoing a life sentence* who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury, shall be guilty of a felony and shall be imprisoned in the state prison not less than three years.' " (*Noah, supra*, 5 Cal.3d at p. 475, italics added in original.)

Aside from amendments that modified section 4501's sentencing triad, this statute remained identical to the version interpreted in *Noah* until 2004. (Stats. 1976, ch. 1139, § 284, p. 5154; Stats. 1978, ch. 579, § 33, pp. 1993–1994.)

In 2004, section 4501 was amended as follows, and added the italicized introductory phrase and deleted the bracketed marked-out phrase:

> "*Except as provided in Section 4500*, every person confined in a state prison of this state [except one undergoing a life sentence] who commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury, shall be guilty of a felony …." (Stats. 2004, ch. 405, § 17 (Senate Bill 1796).)

---

imprisonment in the state prison not exceeding 10 years, or in a county jail not exceeding one year, or by fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment….' " (*Noah, supra*, 5 Cal.3d at p. 477, fn. 6.)

The 2004 amendments to section 4501 were enacted pursuant to Senate Bill 1796, the 2003–2004 "Public Safety Omnibus Bill," that contained multiple provisions that "ma[d]e only technical or minor changes" to several statutes, including section 4501. (Sen. Com. on Public Safety, Rep. on Sen. Bill No. 1796 (2003–2004 Reg. Sess.) Apr. 19, 2004, pp. 2, 4.) According to the legislative history, the amendments to section 4501 were intended to "correct[] a drafting ambiguity. Penal Code sections 4500 and 4501 are intended to complement each other. However, Penal Code section 4501 uses non-standard language to exempt Penal Code section 4500. Instead of 'except one undergoing a life sentence,' the exception in Penal Code section 4501 should read, 'Except as provided in Section 4500.' This standard language would clarify that Penal Code section 4501 applies to all cases except for those covered by Penal Code section 4500." (Stats. 2004, ch. 405; Sen. Com. on Public Safety, Analyses of Sen. Bill No. 1796 (2003–2004 Reg. Sess.) Apr. 19, 2004, pp. 7–8.)

In 2014, section 4501 was again amended to divide the statute into two subdivisions: subdivision (a) defined assault with a deadly weapon or instrument, and subdivision (b) separately defined assault by means of force likely to produce great bodily injury. The rest of the statutory language remained unchanged. (Stats. 2014, ch. 51, § 1 (Senate Bill 905).) According to the legislative history, the purpose of the 2014 amendments was to "make technical, nonsubstantive changes to these provisions" (Legis. Counsel's Dig., Sen. Bill 905 (2013–2014 Reg. Sess.); Stats. 2014, p. 97), and reorganize section 4501 to "place the crimes of assault with a deadly weapon by a prison inmate and assault by a prison inmate by means of force likely to produce great bodily injury in two separate subdivisions of … Section 4501, thereby allowing prosecutors, defense counsel and judges to determine the nature of a prior conviction under Section 4501 by reference to the subdivision under which the defendant was convicted," since assault with a deadly weapon was a serious felony and a strike, and assault by

18.

means of force was not. (Sen. Comm. on Public Safety, Rep. on Sen. Bill No. 905 (2013–2014 Reg. Sess.) Mar. 24, 2014, pp. 1–2, 4.)

In 2015, section 4501 was amended to add one phrase ("in the state prison") (Stats. 2015, ch. 303, § 401 (A.B. 731)), and currently states:

> "(a) *Except as provided in Section 4500*, every person confined in the state prison of this state who commits an assault upon the person of another with a deadly weapon or instrument shall be guilty of a felony and shall be imprisoned in the state prison for two, four, or six years to be served consecutively.

> "(b) *Except as provided in Section 4500*, every person confined in the state prison of this state who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be guilty of a felony and shall be imprisoned in the state prison for two, four, or six years to be served consecutively." (Italics added.)[5]

## C.     *Section 4500*

As for section 4500, the version interpreted by *Noah* stated: " 'Every person *undergoing a life sentence in a state prison* of this state, who, *with malice aforethought*, commits an assault upon the person of another, other than another inmate, with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death; however, in cases in which … the person … assaulted is another inmate, the punishment shall be death or imprisonment in the state prison for life without possibility of parole for nine years, at the discretion of the court or jury trying the same.…' " (*Noah, supra*, 5 Cal.3d at p. 474, italics added.)

---

[5] The jury was instructed on the elements of violating subdivision (a) of section 4501 as follows: (1) the defendant did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person; (2) the defendant did that act willfully; (3) when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; (4) when the defendant acted, he had the present ability to apply force with a deadly weapon to a person; and (5) when he acted, the defendant was confined in a state prison.

19.

Section 4500 has been amended several times since *Noah* was decided, but "the phrase 'undergoing a life sentence' has remained constant throughout the revisions." (*People v. Superior Court (Bell)* (2002) 99 Cal.App.4th 1334, 1340 & fn. 4.)  Section 4500 currently states in relevant part:

> "Every person *while undergoing a life sentence,* who is sentenced to state prison within this state*, and who, with malice aforethought*, commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death or life imprisonment without possibility of parole .…"  (Italics added.)

"Malice aforethought as used in section 4500 has the same meaning as it has for murder convictions, requiring either an intent to kill or 'knowledge of the danger to, and with conscious disregard for, human life.' "  (*People v. Jeter* (2005) 125 Cal.App.4th 1212, 1216.)

### D.  *Analysis*

Defendant did not raise *Noah*'s affirmative defense at trial or assert that he could not be tried for violating section 4501 because he was serving a life term when he committed the charged offense.  On appeal, he argues that since it was undisputed that he was serving a life term, *Noah* held that a violation of section 4501 required an affirmative showing that he was not serving a life term and his conviction is invalid.  In the alternative, he argues defense counsel was prejudicially ineffective for failing to raise his life term as an affirmative defense.

The People respond that *Noah* is no longer valid and has been undermined by subsequent amendments to section 4501, and defendant was properly convicted even though he was serving a life term at the time of the offense.

The version of section 4501 analyzed by *Noah* included the basic elements of the current statute at issue in this case with one critical exception – the perpetrator could be any person confined in state prison *except* one serving a life sentence.  (*Noah, supra,*

5 Cal.3d at p. 473.) The existence of this specific statutory language was the basis for *Noah*'s conclusion that a prisoner charged with violating section 4501 could raise his life sentence as an affirmative defense.

While it appears that defendant was properly convicted of violating section 4501 under the current version of the statute, we cannot ignore the legislative history of the post-*Noah* amendments to section 4501, that all statutory changes were solely intended as technical and nonsubstantive. There is nothing in the legislative history of any of the post-*Noah* amendments to suggest either an express or implied legislative intent to change the nature and elements of the offense, the affirmative defense, or to undermine or overrule the California Supreme Court's express holding in *Noah*. Section 4501 may be subject to the interpretation suggested by the People, that permits an inmate serving a life term to be convicted of an assault committed without malice aforethought, but such an interpretation is inconsistent with the legislative history of the post-*Noah* amendments to section 4501.

### 1.      Milward

The California Supreme Court has not revisited *Noah* except to reject the assertion that the decision was no longer valid because of post-*Noah* statutory amendments. In *People v. Milward* (2010) 182 Cal.App.4th 1477 [review granted and opinion superseded (Cal. 2010) 111 Cal.Rptr.3d 694 [233 P.3d 1090], and rev'd (2011) 52 Cal.4th 580], the defendant was a life prisoner and convicted of both assault with a deadly weapon (§ 245, subd. (a)(1)) and assault by a life prisoner with a deadly weapon (§ 4500). On appeal, the defendant argued he could not be convicted of assault with a deadly weapon since it was a lesser included offense of section 4500, and the People conceded the point based on *Noah*. (*People v. Milward,* at pp. 1479–1480.)

The Third District rejected the People's concession and held the defendant was properly convicted of both offenses. The court held it was no longer bound by *Noah* because "[a]fter *Noah* was decided, *though not in response thereto*, the Legislature

21.

materially rewrote section 245" so that it was now "possible to violate section 4500 without violating section 245, subdivision (a)(1)." (*People v. Milward, supra*, 182 Cal.App.4th at p. 1481, italics added.) "Thus, aggravated assault as provided by section 245, subdivision (a)(1) *cannot* be committed with a firearm, because assaults with firearms are explicitly excluded from that offense. However, aggravated assault by a life prisoner as provided by section 4500 *can* be committed with a firearm, a type of deadly weapon. Therefore, if a life prisoner committed an assault *with a firearm,* she or he would violate section 4500, but would *not violate* section 245, subdivision (a)(1). Therefore, the latter is not included within the former." (*Id.* at p. 1483, fn. omitted.)

In reaching this conclusion, the Third District acknowledged it was bound to following rulings from the California Supreme Court by *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, but "where a California Supreme Court opinion states a rule based on a statute that has been materially amended, we are not bound.… [¶] … The version of section 245, subdivision (a) addressed by *Noah* has been materially changed and *Noah* no longer provides a binding interpretation." (*Milward, supra*, 182 Cal.App.4th at p. 1483, fn. omitted.)

The California Supreme Court granted review in *People v. Milward* (2011) 52 Cal.4th 580, and summarized and disagreed with the Third District's opinion:

> "The Court of Appeal noted our decision in [*Noah*], which held that aggravated assault (§ 245, subd. (a)) was a lesser offense included within the crime of aggravated assault by an inmate not serving a life sentence (§ 4501). The Court of Appeal acknowledged that '*Noah* applies to section 4500 [(aggravated assault by a life prisoner)] equally as it applies to section 4501 [(aggravated assault by a nonlife prisoner)]; that is, *Noah* compels the conclusion that aggravated assault by a life prisoner could not be committed without committing aggravated assault *as then proscribed* by section 245, subdivision (a).' The Court of Appeal pointed out, however, that in 1982, 11 years after *Noah,* an amendment by the Legislature 'materially changed' the version of section 245's subdivision (a) at issue in *Noah.* Thus, the Court of Appeal held, *Noah's* interpretation is 'no longer … binding.'

"The Court of Appeal concluded that the 1982 amendment [to section 245] created two separate crimes:  the offense of aggravated assault, which is committed with 'a deadly weapon or instrument *other* than a firearm' (§ 245, subd. (a)(1), italics added) and assault 'with a firearm' (§ 245, subd. (a)(2)).  The Court of Appeal reasoned:  '[A]ggravated assault as provided by section 245, subdivision (a)(1) *cannot* be committed with a firearm, because assaults with firearms are explicitly excluded from that offense.  However, aggravated assault by a life prisoner as provided by section 4500 *can* be committed with a firearm, a type of deadly weapon.  Therefore, if a life prisoner committed an assault *with a firearm,* she or he would violate section 4500, but would *not violate* section 245, subdivision (a)(1).  Therefore, the latter is not included within the former.'  We granted defendant's petition for review."  (*Id.* at p. 584.)

*Milward* held the defendant could not be convicted of both offenses, and assault with a deadly weapon was still a lesser included offense of section 4500, even after the post-*Noah* amendments to section 245.  (*People v. Milward, supra*, 52 Cal.4th at pp. 582–583, 586.)  While *Milward* did not expressly reaffirm *Noah*, it rejected the Third District's conclusion that *Noah* was no longer binding authority.  "By its terms, section 245's subdivision (a)(1) is violated when the defendant commits an 'assault,' either 'with a deadly weapon or instrument,' or by 'force likely to produce great bodily injury.'  That language is identical to the language in section 4500 punishing a *life prisoner* for committing 'an assault … with a deadly weapon or instrument, or by … force likely to produce great bodily injury.'  (§ 4500 is the greater offense because the minimum sentence for a defendant who violates that section is a term of life imprisonment without the possibility of parole for nine years, whereas the maximum sentence for a violation of § 245's subd. (a)(1) is a four-year prison term.)  Thus, every element of the crime described in section 245's subdivision (a)(1) is also an element of the crime set forth in section 4500, and consequently every defendant who violates section 4500 necessarily also violates the lesser offense described in section 245's subdivision (a)(1)."  (*Milward, supra*, 52 Cal.4th at pp. 588–589.)

23.

### E. *Conclusion*

In the absence of further guidance from the California Supreme Court, we are compelled to continue to follow *Noah.* We reverse defendant's conviction for violating section 4501, subdivision (a), modify it to the lesser included offense of assault with a deadly weapon in violation of section 245, subdivision (a)(1), and remand the matter for resentencing. (*Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d 450; *People v. McDaniel* (2008) 159 Cal.App.4th 736, 749 [a violation of § 245, subd. (a)(1), assault with a deadly weapon, is a lesser included offense of § 4501].[6]

In doing so, we urge the Supreme Court to reconsider *Noah* in light of the subsequent amendments to section 4501. As alluded to above, the court in *Noah* acknowledged that it was "[a]n anomalous result, one probably unintended by the Legislature, *but which this court is powerless to correct* …." (*Noah, supra,* 5 Cal.3d at p. 476, fn. 5, italics added.) The legislative history which we have cited does support the view that amendments to section 4500 and 4501 were nonsubstantive and technical. Yet, we are very mindful that the rules of interpretation allowing reference to legislative history are properly invoked where there is uncertainty as to meaning. (See, e.g., *People v. Flores* (2003) 30 Cal.4th 1059, 1063.) This case presents a challenge in dealing with the tension between what is arguably the plain meaning of the relevant statutes, as modified, and the legislative history and precedent. Given these facts, revisiting the issue by our high court would be most welcome.

## II. Section 1381 Motion to Dismiss

Defendant next argues the court committed prejudicial error when it denied his motion to dismiss brought pursuant to section 1381, based on his argument that he was

---

[6] In light of this conclusion, we need not address defendant's alternate argument that defense counsel was prejudicially ineffective for failing to argue that his status as an inmate serving a life term was an affirmative defense to the charge of violating section 4501.

not brought to trial "within 90 days" after he made such a demand on the district attorney in 2016. Defendant asserts section 1381 applies to his case because the charges against him were "imminent and pending" in 2016, immediately after he committed the assaultive offense, even before the district attorney filed the criminal complaint against him in 2017.

**A.** *Section 1381*

We begin with section 1381, that "governs the right of California prisoners to be brought to trial *on pending charges* within 90 days of request." (*People v. Vila* (1984) 162 Cal.App.3d 76, 81, italics added.)

Section 1381 has two parts, each dependent on the defendant being incarcerated and having two separate cases filed against him or her. The first part states, in relevant part:

> "Whenever a defendant has been *convicted*, in any court of this state, of the commission of a felony … *and has been sentenced* to and has entered upon a term of imprisonment in a state prison …, and at the time of the entry upon the term of imprisonment or commitment *there is pending*, in any court of this state, … any criminal proceeding wherein the defendant *remains to be sentenced*, *the district attorney of the county in which the matters are pending shall bring the defendant to trial or for sentencing within 90 days after the person shall have delivered to said district attorney written notice of the place of his or her imprisonment or commitment and his or her desire to be brought to trial or for sentencing* … unless a continuance beyond the 90 days is requested or consented to by the person, in open court…. In the event that the defendant is not brought to trial or for sentencing within the 90 days the court in which the charge or sentencing is pending shall … dismiss the action." (Italics added.)

This first part of section 1381 provides that if, at the time the defendant is sentenced in the first case, there is a charge pending in a second case, then the defendant is entitled to a trial or sentencing in the second case within 90 days of the defendant informing the district attorney in writing that he or she is incarcerated as a result of the first case and demands a trial or sentencing in the second case. The principal purpose of

this part of section 1381 " ' " 'is to permit a defendant to obtain concurrent sentencing at the hands of the court in which the earlier proceeding is pending, if such is the court's discretion.' " ' " (*People v. Wagner* (2009) 45 Cal.4th 1039, 1056; *People v. Murdock* (2018) 25 Cal.App.5th 429, 434; *People v. Boggs* (1985) 166 Cal.App.3d 851, 855 (*Boggs*).)

Defendant's motion to dismiss the instant case was based on second part of section 1381, that states in relevant part:

> "… If a charge is filed against a person *during the time the person is serving a sentence in any state prison* … it is hereby made mandatory upon the district attorney of the county in which the charge is filed to bring it to trial within 90 days after the person shall have delivered to said district attorney *written notice of the place of his or her imprisonment or commitment and his or her desire to be brought to trial upon the charge,* unless a continuance is requested or consented to by the person …. In the event the action is not brought to trial within the 90 days the court in which the action is pending shall … dismiss the charge. The sheriff, custodian, or jailer shall endorse upon the written notice of the defendant's desire to be brought to trial or for sentencing the cause of commitment, the date of commitment, and the date of release." (Italics added.)

Under this second part of section 1381, "a state prisoner who is charged with another crime while serving his prison sentence must be tried on the new charge within 90 days after he has delivered to the district attorney a written demand to be brought to trial. If he is not brought to trial within 90 days, the court, on motion of the defendant, must dismiss." (*People v. Eldridge* (1997) 52 Cal.App.4th 91, 93 (*Eldridge*).)

Section 1381 is one of a series of statutory speedy trial provisions that "are 'supplementary to and a construction of' the state constitutional speedy trial guarantee." (*People v. Martinez* (2000) 22 Cal.4th 750, 766; *People v. Villanueva* (2011) 196 Cal.App.4th 411, 422; *Craft v. Superior Court* (2006) 140 Cal.App.4th 1533, 1539.) Section 1381 and these other statutes "require dismissal for certain delays *after* the arraignment or the commence of the proceeding, but do not cover delay *prior* to arraignment or the commencement of the proceeding." (*People v. Valenzuela* (1978)

86 Cal.App.3d 427, 430, italics added.) "Section 1381 assumes that an accusatory pleading is on file ('Whenever … there is pending [an accusatory pleading]'; 'If a charge is filed'). If the accusatory pleading is dismissed, there is no longer anything upon which a pending section 1381 demand can operate." (*Eldridge, supra*, 52 Cal.App.4th at p. 95.) However, a dismissal under section 1381 does not bar a second prosecution for the same offense if it is a felony. (*People v. Gutierrez* (1994) 30 Cal.App.4th 105, 109.)

"Section 1381 was not intended to be used as a means of avoiding prosecution." (*Boggs, supra*, 166 Cal.App.3d at p. 855.) " 'An express requirement for the operation of … section 1381, q.v., is that the defendant shall "desire to be brought to trial." Clearly implied is the condition that he shall reasonably cooperate with, and not obstruct, the prosecutor's efforts to bring on the trial within the statutory period. The statute is designed to implement the Constitution [citations]; it is not to be invoked by a defendant for the purpose of starting the statutory time running, and then by one means or another forestalling a trial within that period, thus to attain immunity from further prosecution.' " (*Id.* at p. 855, fn. 3.)

We now turn to the procedural history of this case leading to defendant's motion to dismiss, that he made on what had been scheduled as the first day of trial.

### B.     *Initial Proceedings and Defendant's Time Waivers*

It is undisputed that defendant was a state prisoner when he committed the assaultive offense on Officer Parra on July 8, 2016. The statute of limitations for the assaultive felony offense is three years. (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1089, fn. 2; § 801.)

As will be explained below, defendant subsequently claimed he sent a section 1381 demand for prosecution to the district attorney's office in or about August 2016.

On August 29, 2017, the Kings County District Attorney's office filed the criminal complaint against defendant, within the limitations period, and it is undisputed no other charges were filed prior to that date.

On October 3, 2017, the court held the arraignment and appointed counsel. Defendant entered a general time waiver.

On November 15, 2017, the preliminary hearing was held, and the court held defendant to answer. On November 30, 2017, the information was filed. On December 1, 2017, defendant pleaded not guilty and again waived time.

On January 18, 2018, defendant withdrew his prior plea of not guilty and pleaded not guilty by reason of insanity. The court appointed two experts to examine defendant. On March 8, 2018, the court read and considered the experts' reports and found defendant was legally sane at the time of the charged offense. Defense counsel requested a jury trial on sanity.

On April 25, 2018, the court granted defense counsel's motion to continue. On May 4, 2018, the court granted the parties' joint request to vacate the trial date and continued the matter.

On May 25, 2018, the court granted defense counsel's motion for a continuance for another doctor to examine defendant. On June 28, 2018, defense counsel reported the matter was not resolved and requested the matter be set for a jury trial.

On August 30, 2018, defense counsel requested the court vacate the jury trial date to hear his motion for discovery of law enforcement records pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531. Defendant waived time for a speedy trial.

### C.      *Defendant's First Section 1381 Motion to Dismiss*

On September 24, 2018, the court held an in camera hearing on defendant's *Pitchess* motion. After the in camera hearing, the court returned to an open session and stated there were no documents subject to disclosure.

Defendant addressed the court and said he wanted to file a motion to dismiss. The court advised him to have his attorney handle it. Defendant said his attorney would not file it. Defense counsel stated he had a duty not to file a frivolous motion. The court asked about the motion. Defendant said the motion alleged his right to a speedy trial was

violated, and he did not receive notice "until over a year-and-a-half that charges *were even pending against me* after I filed a Motion to Dismiss," a couple of months after the charged incident. (Italics added.)

Defense counsel said there were several things in defendant's motion that he thought "were way off." The court replied that counsel needed to determine if it was valid. Counsel said he "looked at everything and there's not one thing in there … there's nothing with merit that I saw in there."

The court asked counsel about the allegation that the charges were not timely filed. Defense counsel said, "[T]hey have up to four years to file it. At some point it has to be investigated by the Department of Corrections and they make a recommendation to the People. And, then, the People decide to file it and, then, it gets filed and it does take some time." The court and the parties did not discuss the matter further.

### D. *Pretrial Proceedings*

On April 23, 2019, the court convened the trial confirmation hearing. Defense counsel confirmed that defendant was still going to plead not guilty by reason of insanity, he was ready to proceed, and objected to any further continuances.[7] The court denied the prosecution's motion to continue for insufficient good cause and confirmed the trial for the next day.

### E. *Defendant's Second Section 1381 Motion to Dismiss*

On April 24, 2019, the court convened the matter for trial. Defendant addressed the court and made an oral motion to dismiss the information pursuant to section 1381. Defendant asserted he had already brought a "demand motion" for trial in August 2016, the district attorney did not bring him to trial within 90 days, his case should be dismissed, and he requested to file documents to support his motion.

---

[7] On September 25, 2019, after his trial began, defendant withdrew his plea of not guilty by reason of insanity.

Defense counsel said he did not agree with defendant's motion but would not object if the court decided to lodge his documents.

The court agreed to file the following supporting documents submitted by defendant.

### 1. Section 1381 Demand – August 2016

As noted above, defendant was alleged to have committed the assault on July 8, 2016.

Defendant's first document filed in support of his section 1381 motion was a preprinted form (CDC 643) entitled "Notice and Demand for Trial," signed by defendant on or about August 21, 2016, and addressed to the Kings County District Attorney.

In this document, defendant declared he was currently incarcerated in state prison after being convicted of attempted murder in 2009; he was sentenced to 47 years to life on June 8, 2009, and his parole date was 2055. Defendant declared that charges were "pending" against him for assault and battery with a deadly weapon on a peace officer with serious bodily injury.

The form's preprinted language stated that defendant demanded "a hearing and trial of said criminal action as prescribed by section 1381." As will be explained later, defendant did not submit a proof of service, envelope, or other document to corroborate when form was submitted for mailing to the district attorney's office.

### 2. Defendant's Letter Asking for a Copy of the Section 1381 Demand – 2018

Defendant's next supporting document was a handwritten letter that he signed on or about May 30, 2018, addressed to the district attorney's office.

In this letter, defendant requested the district attorney acknowledge that he sent a section 1381 demand for trial to that office "almost two years ago." Defendant stated the case had been "picked up," but it was too late; he needed proof "to strengthen" his

motion to dismiss and asked the district attorney to send him a copy of his prior demand to corroborate his claims.

### 3.     The District Attorney's Response

Defendant's third supporting document was a form letter sent to defendant by the district attorney, dated June 7, 2018, that stated, "*This will acknowledge receipt of your trial demand pursuant to Penal Code Section 1381.*  The Kings County District Attorney's Office will take one of the actions mentioned below."  (Italics added.)  The following box was checked:  "A review of our records does not reveal any outstanding cases which would cause the hold you describe.  Upon your release, please contact the Kings County Superior Court for further information."

### F.     *The Court's Denial of Defendant's Motion to Dismiss*

The court reviewed defendant's supporting documents.  Defense counsel declined to argue the matter.  The court stated defendant could personally argue the motion because section 1381 was a "statute for which the defendant can bring a motion outside of his defense counsel…."  Defendant did not argue further argument at that time.

The trial court denied defendant's section 1381 motion to dismiss:

"You have the right [under section 1381] to be brought to trial in ninety days or sentencing *if that matter is pending at the time you begin your commitment to a state prison.*  In this case you did begin your commitment prior to 2016, and you indicated that you did submit a demand on August 21st, 2016, and you provided the Court with a document in support of that.  However, at the time you made that demand *the Complaint in this case was not yet filed, it was not filed until August 29th, 2017.*

"On August 29th, 2017, the Complaint was filed in the current case.  Thereafter you were arraigned on October 3rd, 2017, at which time dates were set, to which you did not object, or time was waived, to which you did not object or to which you consented on the record.  Upon doing that then you implicitly withdrew your demand for jury trial to be completed in those matters within ninety days.

"In connection with your [May 30, 2018] letter, which was sent, if we assume that to be the initial demand because that is the letter which it

appears that the District Attorney's Office actually received. Within the record between 5/30/18 and the trial setting date in this case there are numerous instances of your consent to waivers of time for purposes of setting of today's trial. And so that is how we end up with a trial date today of April 24th, 2019. And upon consent to those continuances or waivers of time you have withdrawn essentially your ninety day demand notice for trial. And, therefore, the Court will deny that motion as well."

Defendant argued the assault case was already "pending" against him at the moment the alleged offense was committed on July 8, 2016, based on *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728 (*Schmidlin*). Defendant argued "pending," as used in section 1381, meant "after an alleged crime *had been committed* that time until the time that the statutes of limitations run[s] out." (Italics added.)

The court held *Schmidlin* was distinguishable from defendant's case:

"[*Schmidlin*] goes on to discuss the very issue you are talking about as to whether or not charge[s] are pending before a Court does it allow then a citation to sit on a prosecutor's desk. [*Schmidlin*] goes onto say, 'One way of dealing with this uncertainty in the case at hand would be to note the absence of evidence that this occurred here, indeed that a citation may have been promptly filed with the magistrate [c]ourt docket of which we have taken judicial notice of plaintiff's request and over defendant's objection that the plaintiff should have offered it earlier.' In that case the docket showed that bail was posted by a bonding company prior to the filing of the Complaint, and therefore the [*Schmidlin*] found that the matter was in fact imminent or impending for purposes of the request or demand for trial.

"In this case, however, you have offered the Court no evidence of when this matter submitted to the District Attorney's Office for purposes of pursuing the matter before the Court. The Complaint in this case was not filed until after the initial demand was made by you, and … upon the time of your first appearances before the Court you waived time to allow this matter to be continued in order – so that certain matters could be taken up by the Court."

The court found defendant failed to produce a proof of service to show when the district attorney received his initial demand. While CDCR may have completed incident reports immediately after the assault in 2016, there was no evidence the matter was referred to the district attorney's office at that time. The court noted that after the

complaint was filed in 2017, defendant waived time in his first appearance and did not demand the case proceed to trial in 90 days. Defendant's second demand was made after the complaint had been filed and he waived time.

Defendant asserted the 90-day period started "from the date that I filed the demand for trial," in August 2016, and the case should be dismissed because the complaint was not filed until 2017. The court again explained that defendant failed to prove a proof of service to show that initial demand was ever delivered to the district attorney. Defendant argued the district attorney admitted it received his letter when responded to his request and sent a copy. The court replied that the district attorney received defendant's second letter in 2018, and there was no evidence when it received first demand that he allegedly sent in 2016. Defendant did not provide a proof of service, an envelope, a certified receipt, or any evidence the 2016 letter "was actually delivered" to the district attorney's office. Defendant replied that the district attorney received his section 1381 demand since it sent a copy of the letter back to him upon request in 2018.

The prosecutor stated the district attorney did not receive the file from CDCR until June 2017. The prosecutor speculated that CDCR may have continued to investigate the incident, and there was nothing for the district attorney's office to act upon if defendant sent the section 1381 demand in 2016. "[I]f we don't have a case – we can't bring him back for a case that we don't have…."

The court again denied defendant's motion and found there was no evidence that the district attorney failed act on a pending matter within the meaning of section 1381.

> "The Court cannot find, based upon the information before it, that there has been a failure to act within ninety days of a demand that was received by the District Attorney's Office in connection with an imminent matter or pending matter for purposes of the statute….
>
> "And, again, just for clarity of the record, the Court will note that upon filing of the Complaint on August [29th], 2017 the record is littered with waivers of time for purposes of scheduling this matter, which occurred in your presence or by you directly before the Court, and this is the first

opportunity given to the Court in connection with the 1381 motion. The Court is going to deny the motion, and we're going to proceed with the trial at this time.

Defendant asked how anyone could prove that a section 1381 demand was sent to the district attorney's office. The court replied there were a number of ways to prove receipt, and again noted defendant had waived time and never raised the section 1381 issue after the case was filed.[8]

### G.     *The Trial Court Correctly Denied Defendant's Motion*

Defendant contends the court should have granted his section 1381 motion to dismiss because his case was "pending or imminent" when he "filed" the demand for prosecution with the district attorney in August 2016. Defendant acknowledges that he did not produce an envelope or proof of service with his section 1381 demand, but points to the district attorney's letter of June 7, 2018, that sent him a copy of his demand and "acknowledge[d] receipt of your trial demand pursuant to Penal Code section 1381." Defendant thus argues the district attorney received his section 1381 demand in August 2016, failed to file any charges against him within 90 days, the complaint was finally filed in August 2017, and the court should have dismissed the charges against him since the complaint was filed more than 90 days after his section 1381 demand.

Defendant's motion was clearly meritless under the first part of section 1381 – that if, at the time defendant is sentence in the first case, there is a charge pending in the second case, and the defendant is entitled to trial or sentencing in the second case within 90 days of the defendant informing the district attorney in writing that he or she is incarcerated as a result of the first case and demands a trial or sentencing in the second

---

[8] The court called the matter for trial on April 24, 2019, and started voir dire prior to hearing defendant's motion to dismiss. After it denied the section 1381 motion, the court granted a mistrial because the parties agreed they had run out of prospective jurors.

On September 23, 2019, when defendant's jury trial finally began, defendant addressed the court and said his section 1381 motion should have been granted, and the trial was being held in violation to his right against double jeopardy. The court did not reconsider the matter.

case. Defendant's "demand" stated he was sentenced for attempted murder in June 2009. Defendant had been serving that term for seven years when he committed the assaultive offense in 2016. As a result, there were no charges pending against him at the time he was sentenced for attempted murder.

Defendant's argument is apparently based on the second part of section 1381, that provides that "a state prisoner who is charged with another crime while serving his prison sentence must be tried on the new charge within 90 days after he has delivered to the district attorney a written demand to be brought to trial. If he is not brought to trial within 90 days, the court, on motion of the defendant, must dismiss." (*Eldridge, supra,* 52 Cal.App.4th at p. 93.)

As a preliminary matter, section 1381 states the district attorney must bring the charge to trial within 90 days "after the person shall have *delivered to* said district attorney" his written demand to be brought to trial. (§ 1381, italics added.) "Because of the drastic sanction imposed by section 1381, a prisoner must strictly comply with its conditions." (*People v. Gutierrez, supra,* 30 Cal.App.4th at p. 111.) The record must show a defendant's section 1381 demand "was *served* on the district attorney … so as to commence the running of the 90-day period." (*Ibid.*, italics added.) The 90-day timeline commences on the date of delivery, and not when the defendant executes or transmits the demand, because the district attorney would have no opportunity to comply with the speedy trial demand without actual notice. (*People v. Contreras* (2009) 177 Cal.App.4th 1296, 1301–1302.)

Defendant asserts he served his section 1381 demand on the district attorney because the district attorney sent a copy of that document back to him upon his request in 2018. However, defendant never produced an envelope, proof of service, or any evidence to establish when the district attorney was served with his section 1381 demand – whether it was when he signed the document in August 2016 or at a later time.

Assuming, without finding that defendant served his section 1381 demand on the district attorney at some point in 2016, it is undisputed that there were no criminal charges filed or pending against him at that time to trigger the second part of section 1381. The trial court correctly denied defendant's motion to dismiss because section 1381 "governs the right of California prisoners to be brought to trial *on pending charges* within 90 days of request." (*People v. Vila, supra,* 162 Cal.App.3d at p. 81, italics added.) Section 1381 only requires dismissal for delay "after the arraignment or the commencement of the proceeding," and does not address delays "*prior* to arraignment or the commencement of the proceeding." (*People v. Valenzuela, supra,* 86 Cal.App.3d at p. 430, italics added.) "Section 1381 assumes that an accusatory pleading *is on file* ('Whenever … there is pending [an accusatory pleading]'; 'If a charge is filed')." (*Eldridge, supra*, 52 Cal.App.4th at p. 95.) Since there were no criminal charges pending or filed against defendant at that time, there was nothing to proceed on. Thus, the triggering event for demanding the district attorney to proceed had not occurred when defendant allegedly sent his "demand" to the district attorney.

We further note that defendant failed to raise this issue after the criminal complaint was filed in August 2017. When he made his first appearance in October 2017, defendant immediately entered a general time waiver and never raised any section 1381 issues. Defendant continued to waive time throughout 2017 and most of 2018.

On or about May 30, 2018, defendant sent a handwritten letter to the district attorney's office and requested a copy of his previous section 1381 "demand" that he sent "almost two years ago," that his case was "picked up," but it was "too late," and he needed proof "to strengthen" his motion to dismiss. Based on defendant's argument at the hearing on his motion to dismiss, the district attorney sent a copy of his "demand" back to defendant on or about June 7, 2018.

This exchange between defendant and the district attorney's office did not constitute a renewed demand under section 1381, given his numerous waivers of time after the charges were actually filed. Moreover, defendant did not raise the section 1381 issue until the court denied his *Pitchess* motion on September 24, 2018, and his attorney advised the court that the motion to dismiss was meritless. Thereafter, defendant again failed to raise any objections until April 24, 2019, after the court convened the matter for trial, when he moved to dismiss his case based on the alleged violation of section 1381. As noted by the trial court, defendant's numerous time waivers undermined his subsequent claim that the district attorney failed to bring him to trial in a timely manner.

### H.  *Schmidlin*

Defendant acknowledges that criminal charges were not filed when he sent his section 1381 demand to the district attorney in August 2016. In the alternative, he renews the argument raised at trial, and asserts his case was imminent or pending at the time the assaultive offense occurred on July 8, 2016, regardless of whether charges had been filed in superior court, based on the holding in *Schmidlin*, *supra*, 157 Cal.App.4th 728. In doing so, defendant focuses on *Schmidlin*'s holding that the phrase " 'pending before a court' " means that "a process to bring about their adjudication is not only 'imminent' or 'impending,' but underway." (*Id*. at p. 754.)

We reject defendant's argument because *Schmidlin* addressed an entirely different statutory question, and defendant has cited the allegedly supportive holding out of context to the factual and legal circumstances of that case.

In *Schmidlin*, the plaintiff filed a civil action against a city, its police department, and several officers based on his allegations that the officers violated his rights during an arrest. The criminal charges began when the plaintiff was detained by police officers, who allegedly threw him to the ground and arrested him for public drunkenness. (*Schmidlin*, *supra*, 157 Cal.App.4th at pp. 735–737.) The plaintiff went to trial on misdemeanor charges of resisting arrest, public intoxication,

37.

false identification, assault on a police officer, and battery on another officer. The plaintiff was found guilty of false identification, and not guilty of public drunkenness and assault; the jury was unable to reach a verdict on resisting arrest and battery. The court granted the plaintiff's motion for new trial on the false information charge, and the prosecutor dismissed the remaining charges and did not retry him. (*Id*. at pp. 736–737.)

The plaintiff then filed the civil action for damages and alleged the officers violated his constitutional rights and committed common law torts when they detained and arrested him. The defendants moved for summary judgment and argued, among other things, that the plaintiff's excessive force cause of action was barred by the statute of limitations. The trial court denied the motion. (*Schmidlin, supra*, 157 Cal.App.4th at p. 737.) The jury found the officers used excessive force against the plaintiff and rejected his claims of unlawful arrest and fabrication of the police reports. Both parties appealed. (*Id*. at p. 735, 738.)

In the appeal, the defendants reasserted the issue raised in the summary judgment, that the plaintiff's excessive force claim was barred by the statute of limitations. (*Schmidlin, supra*, 157 Cal.App.4th at pp. 740–741.) *Schmidlin* rejected the defendants' statute of limitations argument and held the plaintiff's civil claims had been tolled under Government Code section 945.3,[9] a statute that "prohibits the filing of claims such as plaintiff's, and tolls the statute of limitations, so long as related criminal charges are '*pending before a … court.*'" (*Schmidlin, supra*, 157 Cal.App.4th at p. 748, italics added, fn. omitted.)

*Schmidlin* reviewed the history of section 945.3, and held that "charges were 'pending before a court' when plaintiff was directed to appear before the court on specified charges by *service* upon him *of a notice to appear*, regardless whether that

---

[9] All further citations to "section 945.3" are to the statute contained in the Government Code.

notice was ever filed with a court." (*Schmidlin, supra*, 157 Cal.App.4th at p. 756, first italics in original, second italics added.)  The statute's legislative intent was to avoid "the use of a civil complaint as a bargaining chip in plea negotiations," and prevent "the use of civil discovery tools to probe the prosecution's case in a related criminal matter." That intent would be "disserved" by interpreting section 945.3 "to permit a [civil] suit to be filed between the time of serving a citation and the filing of the citation (or a complaint) with a court." (*Schmidlin*, at p. 758.)

> "Such a regime would encourage a race to the courthouse between law enforcement authorities and arrestees.  The legislative history suggests no intent to permit such a circumvention of statutory purpose.  The Legislature's goals, both explicit and inferred, are plainly best served if the disability commences when a misdemeanor defendant is put on notice, by service of a notice to appear, that charges are being pursued in court.  By restricting the statute's effect to charges pending *before a court,* the Legislature was evidently seeking not to delay the *starting* point of the disability, but to provide a workable formula for determining its *end* point. Without the adverbial qualifier ('before a ... court'), it might be supposed that charges not resolved by judgment or dismissal remained 'pending' until some other prohibition, such as the criminal statute of limitations, barred further prosecution.  Under that regime, mere prosecutorial inaction would place the plaintiff's cause of action in limbo.  To avoid such open-ended tolling, the Legislature provided that the arrestee would regain the right to file a civil action – and the limitations period would resume running – when the charges could no longer be pursued without new or additional prosecutorial pleadings." (*Ibid.*)

*Schmidlin* thus concluded that under section 945.3, the statute of limitations for plaintiff's excessive force civil claim was tolled when the notice to appear "*was served on [defendant]*" shortly after his arrest and at the time of his release, continued through the final disposition of the criminal charges, and plaintiff's civil cause of action was timely.  (*Schmidlin, supra*, 157 Cal.App.4th at pp. 749, 753, 761, italics added.)

*Schmidlin* does not support defendant's section 1381 claims since it was based on a different statute with a different legislative intent.  Even if the reasoning of *Schmidlin*

39.

applied, defendant failed to introduce evidence that he received anything similar to the "notice to appear" that the plaintiff in *Schmidlin* received upon his arrest.

More importantly, in contrast to section 945.3, the purpose of section 1381 "is to allow a defendant who is serving a sentence of imprisonment to obtain the benefit of concurrent sentencing by accelerating the resolution of pending charges. [Citation.] Section 1381 was never intended to be used as a means of avoiding prosecution. [Citation.] To the contrary, section 1381 contemplates 'that the defendant [who invokes its benefits] shall "desire to be brought to trial." ' " (*Eldridge, supra*, 52 Cal.App.4th at p. 95.)

We thus conclude that to the extent the district attorney received defendant's section 1381 demand in 2016, that demand was premature since there were no charges filed or pending against him, and the court properly denied his motion to dismiss.

## III. Senate Bill 567

While this appeal was pending, defendant filed a supplemental brief and argued the matter must be remanded for resentencing based on the recent enactment of Senate Bill 567 (2021–2022 Reg. Sess.), because the court imposed the upper term for his conviction of violating section 4501.

As explained in part I., *ante*, we are reducing defendant's conviction to the lesser included offense of section 245, subdivision (a), vacating the sentence, and remanding the matter.

On remand, the court shall also consider the provisions of Senate Bill 567, that amends section 1170 by making the middle term the presumptive sentence for a term of imprisonment unless certain circumstances exist. (Stats. 2021, c. 731, § 1.3, adding § 1170, subd. (b)(1) & (2).) Under this change in law, a trial court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the

defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense." (Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1) & (2).)

Senate Bill 567 became effective on January 1, 2022. Except when passed as an urgency measure, a statute enacted at a regular session of the Legislature generally becomes effective on January 1 of the year following its enactment. (Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600, subd. (a).)

The People concede that defendant's judgment was not final when Senate Bill 567 went into effect, and this change in law will apply retroactively to him. (See *In re Estrada* (1965) 63 Cal.2d 740, 742.) We agree with the People. "Except when passed as an urgency measure, a statute enacted at a regular session of the Legislature generally becomes effective on January 1 of the year following its enactment. [Citations.] … [¶] We are to assume, absent evidence to the contrary, that the Legislature intended an 'amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date.' " (*People v. Lopez* (2019) 42 Cal.App.5th 337, 341.) The court shall thus address the provisions of Senate Bill 567 on remand.

## IV. The Restitution Fine and Fees

Defendant argues the court improperly ordered him to pay a restitution fine and other fees without determining his ability to pay in violation of his constitutional right to due process under *People v. Dueñas* (2019) 30 Cal.App.5th 1157. We need not address these contentions since we are reversing defendant's conviction for violating section

41.

4501, vacating defendant's sentence, and remanding the matter for another sentencing hearing.

## **DISPOSITION**

Defendant's conviction for violating section 4501 is reversed and modified to the lesser included offense of assault with a deadly weapon in violation of section 245, subdivision (a)(1). His sentence is vacated, and the matter remanded for further appropriate proceedings.


POOCHIGIAN, ACTING P. J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.